NOAH G. BLECHMAN (State Bar No. 197167)
noah.blechman@mcnamaralaw.com
MCNAMARA, NEY, BEATTY, SLATTERY,
BORGES & AMBACHER LLP
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
Telephone: (925) 939-5330
Facsimile:  (925) 939-0203

Attorneys for Defendants
CITY OF ANTIOCH, TAMMANY BROOKS, JAMES
PERKINSON, ARTURO BECERRA, DANIEL HOPWOOD,
and NICHOLAS SHIPILOV

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA CASSANDRA QUINTO-COLLINS, individually and as successor-in-interest to Decedent ANGELO QUINTO; and ISABELLA COLLINS, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ANTIOCH, a municipal corporation; TAMMANY BROOKS, individually; JAMES PERKINSON, individually and in his official capacity as a police officer for the CITY OF ANTIOCH; ARTURO BECERRA, individually and in his official capacity as a police officer for the CITY OF ANTIOCH; DANIEL HOPWOOD, individually and in his official capacity as a police officer for the CITY OF ANTIOCH; NICHOLAS SHIPILOV individually and in his official capacity as a police officer for the CITY OF ANTIOCH; and DOES 5-50, inclusive,<br><br>Defendants. | Case No. C21-6094 VC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PORTIONS OF PLAINTIFFS' COMPLAINT FOR DAMAGES PURSUANT TO FRCP 12(B)(6) AND, ALTERNATIVELY, MOTION FOR BIFURCATION IF SUCH CLAIMS SURVIVE**<br><br>Date: December 9, 2021<br>Time: 10:00 A.M.<br>Ctrm: 4, 17th Floor<br>Judge: Vince Chhabria |

## NOTICE

PLEASE TAKE NOTICE that on December 9, 2021 at 10:00 A.M., or as soon thereafter as this matter can be heard, in United States District Court Northern District, Defendants will and do move to dismiss portions of the Complaint for Damages ("Complaint") filed by MARIA CASSANDRA QUINTO-COLLINS and ISABELLA COLLINS ("Plaintiffs"). This motion is made pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) since Plaintiffs' Complaint and specifically Plaintiff Quinto-Collins' Third Cause of Action ("COA") for liability under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978), and claimed supervisory liability, as set forth more fully in the Memorandum of Points and Authorities, fails to state claims upon which relief can be granted. In the event that the claims survive, Defendants request *bifurcation* of the individual claims from the *Monell* and supervisory claims, for both discovery and trial. This motion is based on this notice, the Memorandum of Points and Authorities, the Declaration of Noah G. Blechman, and further evidence and oral argument as presented at the hearing on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This civil lawsuit arises from the lawful contact and interaction between several officers of the Antioch Police Department ("APD") and Decedent on December 23, 2020, after officers were called to the house due to an ongoing domestic dispute. *See* **Exh. A**, Complaint. During the contact, Decedent went into medical distress, could not be fully revived and died several days later. *Id*. Defendants contest the allegations in the Complaint and the cause of death, among other issues.

Plaintiff's Third COA for *Monell* liability is insufficient as the allegations are merely formulaic recitations of law, unsupported by any factually similar incidents of sufficient duration, frequency, and consistency as required under *Monell*. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Estate of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1208 (E.D. Cal. 2019). Plaintiff took an overly broad approach to pleading their *Monell* claims and compounded conclusory statement on top of conclusory statement in a desperate attempt to distract from her complete lack of supporting facts on these issues. Further, Plaintiff's citation to two events that occurred nine years before this incident are simply too dissimilar to provide notice to the City (or specific

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

policymakers) that Officer Perkinson's detention of a struggling subject was a part of a widespread and well-settled custom of similar excessive force or that Officer Perkinson was inadequately trained on the technique he deployed during this incident. As stated below, Plaintiff's *Monell* and supervisor liability claims must consist of more than conclusory allegations and require Plaintiff to state facts sufficient "to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). It is clear the Plaintiff's *Monell* claims are fatally conclusive, and since Plaintiff would have pled facts if any such facts existed, the Third COA should be dismissed without further leave to amend, as amendment is futile. In the event that the claims are permitted to remain, Defendants request bifurcation of the individual claims from the *Monell* and supervisory claims.

## II. **PLAINTIFF'S FACTUAL ALLEGATIONS**

Plaintiffs allege that on December 23, 2020, at approximately 11:12 p.m., Antioch Police Department ("APD") officers Perkinson, Becerra, Hopwood and Shipilov responded to a 911 emergency call placed by Plaintiff Isabella Collins. Officers responded to the scene at 1909 Crestwood Drive, Antioch, CA 94509. **Exh. A**, Complaint ¶ 13. Plaintiffs' allege that Decedent suffered a prior head injury and also a prior 5150 psychiatric hold by APD, and these responding officers knew about these events. *Id*. at ¶ 14. After Decedent became aggressive and agitated, Plaintiff Collins called to 911. *Id*. at ¶ 15.

Officers responded and when officers entered, they pulled Decedent out of his mother's grasp and placed him on his stomach in a prone position *Id*. at ¶ 17. Officers handcuffed Decedent and Plaintiffs claim one officer then placed his right leg on the back of Decedent's neck, an ambulance was called to perform a 5150 of Decedent. Despite the Decedent becoming motionless early into the restraint, the restraint continued for several more minutes. *Id*. at ¶ 18. When other officers arrived, another officer switched places and put his knee on the neck of Decedent. Plaintiffs allege that all four officers participated in the extended manual prone restraint of the Decedent. After five minutes of the restraint, the Decedent became unresponsive. *Id*. Officers continued the prone restraint until paramedics arrived at the scene at about 11:22 p.m. Officers turned Decedent over on his side which revealed a puddle of blood. The blood had come from Decedent's mouth area. At the time the paramedics arrived, Decedent did not have a pulse and was not breathing. The

1  paramedics moved Decedent to a stretcher and began to administer CPR while wheeling him to an
2  ambulance. *Id*. at ¶ 19.  Plaintiffs contend the officers asphyxiated Decedent. *Id*. at ¶¶ 20-24.
3  Decedent suffered from an anoxic brain injury and never regained consciousness. Decedent was
4  pronounced dead on December 26, 2020. *Id*. at ¶ 24.

5  Plaintiffs allege that no common drugs were found in Decedent's system, and no evidence
6  of criminal activity was found in the home. Plaintiffs conducted a private autopsy and found that
7  Decedent died as a result of restrain asphyxiation. *Id*. at ¶ 27.

8  On or about March 3, 2021, Defendant Chief Brooks held a press conference where he
9  misled the public about what defendants did and how the Decedent died in an effort to create a false
10 impression that officers did not kill Decedent. Plaintiffs allege that Brooks is a conspirator after the
11 fact in the death of Decedent. *Id*. at ¶¶ 28-29a.  Plaintiffs allege that the death was due to prone
12 restraint and the result of a failure to train officers in the proper use of force, as well as allege
13 ratification, and generally a custom and practice led to this death. *Id*. at ¶¶ 29b-30.

### III. LEGAL STANDARDS

1. FRCP 12(b)(6)

A complaint may be dismissed under FRCP 12(b)(6) as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984).  <u>To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face</u>." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added). While this pleading standard does not require detailed factual allegations, it does demand more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*. (quoting *Bell Atl. Corp v. Twombly*, 127 S.Ct. 1955, 1965 (2007)).  To plead a plausible *Monell* claim sufficient to withstand a Rule 12(b)(6) motion to dismiss, "allegations in a complaint 'may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Wolniak v. Cty. of Sacramento*, 2017 U.S. Dist. LEXIS 211211, at *5 (E.D. Cal. 2017), citing *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).  Additionally, a court may

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

DEFENDANTS' MTD PORTIONS OF PLAINTIFFS'
COMPLAINT PURSUANT TO 12(b)(6)/MOTION FOR
BIFURCATION - C21-06094 VC

3

deny leave to amend where amendment is futile. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. 662, 679-80 (2009). Where the pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged, but it has not shown, that the pleader is entitled to relief. *Id.* Conclusions are not entitled to the assumption of truth and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*

### 2. Dismissal Without Leave to Amend

A court may deny leave to amend where amendment is futile. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Leave to amend is not warranted if an amendment would be futile because the pleading could not possibly be cured by the allegation of other facts. *Partington v. Bugliosi*, 56 F.3d 1147, 1162 (9th Cir. 1995) (denying leave to amend where plaintiff had failed to state a claim for defamation); *Conway v. Geithner*, 2012 WL 1657156 *2 (N.D. Cal. 2012) (denying leave to amend in case of absolute immunity because the amendment would be futile); *Ferris v. City of San Jose*, 2011 U.S. Dist. LEXIS 132984, *14 (N.D. Cal. 2011).

## IV. LEGAL ARGUMENTS

### A. The City and Chief Brooks Are Entitled to Dismissal of Plaintiff's Third Cause of Action For Various Conclusory *Monell* Theories

To establish *Monell* liability, a plaintiff must show (1) he possessed a constitutional right he was deprived of; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997); *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). Plaintiff Quinto-Collins failed to allege any of the required elements of a *Monell* claim in her Complaint, let alone any facts indicating the additional elements required for properly alleging an unlawful custom or practice, failure to train, or ratification claim.

1. <u>Plaintiff's *Monell* Policy/Custom Claim and Failure to Train Claim Must Fail as Plaintiff Has Not Alleged Factually Similar Incidents of Sufficient Duration, Frequency, and Consistency that Establish a Permanent and Well-Settled Practice</u>

In order for Plaintiff to succeed on her *Monell* longstanding practice or custom claim, the alleged unconstitutional practice or custom (namely permitting and/or acquiescing in the commission of acts of excessive/unconstitutional force by its officers ) must be based on more than random acts or isolated events and instead be supported by factually similar incidents of sufficient duration, frequency, and consistency that establish a permanent and well settled practice, thereby putting the City (and policymakers) on notice of the unconstitutional custom. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Thompson v. City of Los Angeles*, 885 F. 2d 1439, 1443-44 (9th Cir. 2010). Without Plaintiff alleging factually similar incidents of sufficient duration, frequency, and consistency, the City cannot be said to have been put on notice of the alleged unconstitutional custom and thus cannot be liable under *Monell*.

Further, in order to succeed on her *Monell* failure to train claim, Plaintiff Quinto-Collins must demonstrate the City's alleged failure to train its officers in the proper use of force as used in this case, namely a prone restraint, amounted to deliberate indifference by the City to the rights of person with whom the untrained officers come into contact. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Deliberate indifference is a stringent standard of fault, requiring proof that a municipality disregarded a known or obvious consequence of their actions. However, adequately trained officers occasionally make mistakes and the fact that they do says little about the training program or the legal basis for holding the city liable. *City of Canton*, 489 U.S. at 379. As such, "a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purpose of failure to train." *Connick v. Thompson*, 563 U.S. at 62.

In *Monell*, the Supreme Court held that a municipality cannot be held liable under a *respondeat superior* theory, but may be liable under § 1983 for constitutional violations that result from enforcement of the municipality's official "policies and customs." *Monell*, 436 U.S. 658, 694 (1978). The Court stated that a "policy" consists of a "policy statement, ordinance, regulation, or

1  decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. An
2  "unconstitutional governmental policy could [also] be inferred from a single decision taken by
3  the *highest officials* responsible for setting policy in that area of the government's business." *City*
4  *of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (emphasis added).

5  If there is no formal unconstitutional policy, or decision by a final policymaker, a
6  municipality can only be liable if there is a "widespread" practice of unconstitutional conduct which
7  is "so permanent and well settled as to constitute a 'custom or usage.'" *City of St. Louis v.*
8  *Praprotnik,* 485 U.S. 112, 123 (1988) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168
9  (1970)) (emphasis added). "Liability for an unconstitutional custom may not be predicated on
10 isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency,
11 and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*
12 *v. Gates*, 99 F. 3d 911, 918 (9th Cir. 1996). One instance of unconstitutional conduct, even if
13 probable, is inadequate to demonstrate sufficient duration and frequency to establish a widespread
14 and well-settled custom under *Monell*. *Cardenas v. Cnty. of Alameda*, U.S. Dist. LEXIS 66904 *9
15 (N.D. Cal. 2017); *Bedford v. City of Hayward*, U.S. Dist. LEXIS 148875 *36-39 (N.D. Cal. 2012).

16 The inquiry regarding adequacy of notice is highly specific to the facts of the case under
17 consideration; the line between adequate and inadequate evidence of repeated constitutional
18 violations does not involve a specific quantum or number of allegations. *Gonzalez v. Cty. of*
19 *Merced*, 289 F. Supp. 3d 1094, 1099 (E.D. Cal. 2017) (emphasis added); *Estate of Mendez v.City*
20 *of Ceres*, 390 F. Supp. 3d 1189, 1208 (E.D. Cal. 2019). For example, the Ninth Circuit has held
21 that two unconstitutional assaults occurring three months apart were insufficient to show custom
22 or practice, *Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988), but five incidents
23 of suppression of political speech on the same day was sufficient, *Menotti v. City of Seattle*, 409
24 F.3d 1113, 1148 (9th Cir. 2005); *J.M. v. Cty. of Stanislaus*, 2018 U.S. Dist. LEXIS 190855 (E.D.
25 Cal. 2018) (One or two incidents ordinarily cannot establish a policy or custom, while more
26 incidents may permit the inference of a policy, taking into account their similarity, their timing, and
27 subsequent actions by the municipality.).

28 In *Estate of Mendez*, the Court identified the type of analysis to be used when determining

1   whether prior incidents of alleged unconstitutional conduct establish notice under *Monell* to the
2   public entity such that they could have prevented the harm in the alleged matter. *Estate of Mendez*
3   *v. City of Ceres*, 390 F. Supp. 3d 1189, 1209 (E.D. Cal. 2019). The *Estate of Mendez* Court held
4   that in order to determine whether other incidents would place a defendant on notice of improper
5   customs or deficiencies in training, the court must take into account, together, the similarity of the
6   incidents, their timing, and subsequent actions by the municipalities. *Estate of Mendez*, 390 F.
7   Supp. 3d at 1209 (emphasis added). The Court acknowledged that plaintiff had presented incidents
8   involving some allegations of significant force being used in situations where the force may
9   plausibly be said to have been excessive. *Id*. However, the Court found that the alleged prior
10  incidents were to dissimilar to the pending case to provide notice and to identify the specific
11  deficiency in the department's policies. *Id*. The Court rejected Plaintiff's broad allegation that the
12  department had a general policy and/or custom of permitting excessive force against persons
13  contacted and required plaintiffs to plead factually similar incidents that would place defendants on
14  notice of deficiencies or omissions in training or supervision that is closely related to the ultimate
15  injury in the pending matter. *Id*.

16  Here, as in *Estate of Mendez*, Plaintiffs' Complaint failed to plead facts that show the City
17  had a well settled and widespread custom (as opposed to an isolated incident) and their *Monell*
18  claims should be dismissed without leave to amend as they have already had an opportunity to
19  adequately plead these claims. As discussed above, to survive, Plaintiffs' Complaint must allege
20  factually similar situations of sufficient duration, frequency and consistency that put the City on
21  notice regarding the unconstitutional custom and that the alleged failure to train amounted to
22  deliberate indifference to the rights of persons such as Defendant. *Trevino v. Gates*, 99 F.3d 911,
23  918 (9th Cir. 1996); *Estate of Mendez*, 390 F. Supp. 3d 1189, 1209 (E.D. Cal. 2019).

24  Plaintiff Quinto-Collins failed to provide any factually similar situations of sufficient
25  duration, frequency and consistency. Instead, Plaintiff merely provided brief conclusory
26  statements, not even other incidents, other lawsuits or claims of excessive force, against the APD
27  or City. The generic allegations of claimed excessive force for prior "use of excessive force" is too
28  broad, unspecific and hollow. **Exh. A**, Complaint, ¶ 30. Further, there is no evidence of any prior

DEFENDANTS' MTD PORTIONS OF PLAINTIFFS'           7
COMPLAINT PURSUANT TO 12(b)(6)/MOTION FOR
BIFURCATION - C21-06094 VC

1  actions that arose from situations similar to that was alleged here, namely an allegedly
2  unconstitutional prone-restraint. Even if Plaintiff's allegations are deemed specific enough, they
3  are still not enough to show any custom or practice. *Sweiha v. County of Alameda*, 19-cv-03098-
4  LB 2019 WL 4848227, at *7-8 (N.D. Cal. Oct. 1, 2019) (Plaintiff's allegations of five other
5  incidents of alleged misconduct do not show a custom or policy where the incidents "have markedly
6  different facts."). Just as in *Estate of Mendez*, claimed prior incidents were not alleged with
7  sufficient detail to put the City (or other policymakers) on notice of the alleged unconstitutional
8  policy connecting them. Plaintiff merely alleged that the City has a general policy of allowing all
9  types of excessive force without providing any details of prior incidents that are factually similar.

10  Plaintiff's attempt to link prior a federal excessive force action and a prior shooting
11  involving one officer (Officer Perkinson), nine years prior to this police contact at issue (**Exh. A**,
12  Complaint, ¶ 42), is simply insufficient to provide notice to the City (and policymakers) that Officer
13  Perkinson's prone-restraint of a struggling suspect was a part of a widespread and well-settled
14  custom of similar excessive force or that Officer Perkinson was inadequately trained on the
15  technique he deployed during this incident. The allegations of prior incidents do not even include
16  prone restraint issues. Essentially, Plaintiff's *Monell* claims assert that the only common thread in
17  these two previous incidents from 2011 is the act of alleged "misconduct" by Officer Perkinson
18  against members of the public. Plaintiff's reference to two nine-year-old force interactions, with
19  drastically different types of force employed than involved here, clearly does not establish a
20  widespread and well-settled policy or custom as required by *Monell*. The Supreme Court and this
21  circuit's case law demands more in order to properly plead *Monell* claims and Plaintiff must provide
22  factually similar situations of sufficient duration, frequency and consistency so as to put the City
23  and policy makers on notice of the alleged unconstitutional policies and/or customs.

24  Further, these prior incidents are clearly isolated and sporadic. If the City had a policy or
25  clear practice/custom of permitting excessive force with all individuals in which its officers contact,
26  Plaintiff would have provided significantly more factually similar incidents of the unconstitutional
27  or improper conduct, or at the very least, incidents that have occurred closer in time to the subject
28  incident. However, Plaintiff cited to only two prior claimed excessive force encounters, nine years

DEFENDANTS' MTD PORTIONS OF PLAINTIFFS'  8
COMPLAINT PURSUANT TO 12(b)(6)/MOTION FOR
BIFURCATION - C21-06094 VC

prior to this subject incident, and which only involved one officer named herein. Plaintiff's failure to provide relevant prior incidents indicates the lack of merit in her *Monell* claims.

*Estate of Mendez* also encourages courts to look at the subsequent actions by the municipalities when determining if prior incidents are sufficient under *Monell*. Here, on information and belief, Plaintiff alleges that the City ratified (see other argument in next section on ratification) the unconstitutional pattern and practice of misconduct, but cites little in support of this contention. Plaintiff merely states that "Brooks has even taken an active public role in concealing the unreasonable use of force" which is not substantial enough to adequately support the ratification allegation. **Exh. A**, Complaint. Chief Brooks did participate in a post-incident press conference. This is clearly a blanket use of the buzzword of ratification which is insufficient on its face. Further, the City's lack of corrective or disciplinary action or speech on this topic is entirely reasonable given that Plaintiff failed to provide factually similar incidents of sufficient duration, frequency, and consistency that establish a permanent and well-settled practice, thereby putting the City (and policymakers) on notice of the unconstitutional custom. In other words, Plaintiff has not shown the unconstitutional underpinnings as a threshold showing.

Accordingly, after taking into account the lack of similarity between the two old prior incidents and the current allegations and their isolated and sporadic timing, it is clear that these prior incidents do not establish notice of *Monell* liability for the City, and certainly do not demonstrate deliberate indifference on the part of the City to the rights of persons such as Decedent. Plaintiff's *Monell* longstanding custom and failure to train claims should be dismissed without leave to amend.

        2.        Plaintiff's *Monell* Ratification Claim Must Be Dismissed

A *Monell* claim under a theory of ratification exists when "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992). "Ratification requires, among other things, knowledge of the alleged constitutional violation" <u>prior</u> to the completion of the alleged constitutional violation. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). It is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute

approval. *Christie*, 176 F.3d at 1239-40 (9th Cir. 1999) ("To hold cities liable under § 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into § 1983."). Instead, there must be "evidence of a conscious, affirmative choice" on the part of the individual with policy making authority to approve the subordinate's decision and the basis for it. *Gillette*, 979 F.2d at 1347 (emphasis added). Finally, to show that ratification was a "moving force" behind the constitutional deprivation, a plaintiff must demonstrate both causation in fact and proximate causation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

Here, Plaintiff contends that ratification is shown because the City and Chief Brooks knew and/or reasonably should have known that Officer Perkinson was previously involved in a police shooting death in 2011, and was previously sued for violations of civil rights in a different matter, also in 2011. In support of her ratification allegation, Plaintiff Quinto-Collins also cites that Defendant Brooks has offered disinformation to the public to conceal the wrongdoing. Regarding the officer involved shooting incident, this case does not bear any resemblances to the 2011 incident. Here, officers did not use any impact tools and did not utilize any deadly force. It is unclear why Plaintiff has referenced a shooting incident as there is nothing in the facts that link that old shooting incident with the incident at hand here. Further, the second incident that occurred in 2011, which Plaintiff referenced to assert a history of misconduct, does not contain any details other than it involved "violations of civil rights." Notably, Plaintiff does not include the outcome of the suit, which in turn, does not indicate if judgment was even entered against Officer Perkinson. Regardless of the outcome of the suit, Plaintiff does not provide any details regarding the use of force used during that incident, nor does Plaintiff provide any facts that link the two altercations. Thus, Plaintiff's ratification theory largely relies on the unrelated and dissimilar prior shooting and lawsuit, which as discussed above, do not establish a longstanding practice and custom or deliberate indifference on behalf of the City under *Monell*, and thus the ratification claims fails for the same reasons as the other *Monell* claims. Nor is there evidence that the City and/or Chief Brooks knew these officers would interact with Decedent and approved of their methods prior to the incident.

There is no viable ratification theory per the allegations and all *Monell* claims fail.

### B. If the Court Permits the *Monell* Claim to Remain, Defendants Request Bifurcation of the Individual Liability Claims and the *Monell* Claims.

Federal Rule of Civil Procedure ("FRCP") 42(b) provides that "the court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim…or of any separate issue." The decision to bifurcate is committed to the sound discretion of the trial court and is only reversed when the reviewing court is "convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir. 2000). Therefore, Rule 42(b) "confers broad discretion upon the district court to bifurcate at trial, thereby deferring costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1088 (9th Cir. 2002). The decision to bifurcate is made on a case-by-case basis. *Robert Bosch, LLC v. Pylon Mfg. Corp.,* 719 F.3d 1305, 1320 (Fed. Cir. 2013).

A court may bifurcate a trial to "avoid[] a difficult question by first dealing with an easier, dispositive issue." *Huizar v. City of Anaheim (Est. of Diaz),* 840, F. 3d 592, 601 (9th Cir. 2016) (citing *Danjaq LLC v. Sony Corp.,* 263 F. 3d 942, 961 (9th Cir. 2001)). The Ninth Circuit has held that implicit in the power of courts to bifurcate trial under Rule 42(b) is the "power to limit discovery to the segregated issues" because "[o]ne of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery pending resolution of potentially dispositive preliminary issues." *Ellingson Timber Co. v. Great N. Ry. Co.,* 424 F. 2d 497, 499 (9th Cir. 1970) (per curiam); *accord Craigslist Inc. v. 3Taps, Inc.,* 942 F. Supp. 2d 962, 982 (N.D. Cal. 2013).

Under FRCP 42(b), courts generally consider four factors when deciding whether to bifurcate a case: (1) whether bifurcation would prejudice either of the parties, (2) the complexity of the issues, (3) whether there would be a risk of jury misunderstanding in a non-bifurcated trial, (4) whether bifurcation would facilitate disposition of the issues (judicial economy). *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982). Additionally, courts consider the separateness of the issues, simplification of discovery and conservation of resources, prejudice to the parties, and

the suitability of bifurcating trial but not discovery. *Bates v. UPS,* 204 F.R.D. 440, 448 (N.D. Cal. 2001); *Kimberly-Clark Corp. v. James River Corp. of Va.,* 131 F.R.D. 607, 608 (N.D. Ga. 1989) ("the paramount consideration must remain a fair and impartial trial to all litigants through a balance of benefit and justice"). The party seeking bifurcation "has the burden of proving that bifurcation is justified." *Mformation Techs., Inc. v. Research in Motion Ltd.* (N.D.Cal. Mar. 29, 2012, No. C 08-04990 JW) 2012 U.S.Dist.LEXIS 56784, at *6. When these factors are applied to the current case, it is clear that bifurcation of trial and discovery of the claims against the individual officer defendants from the claims against the City and supervisors is appropriate and necessary.

Further, other judges from the Northern District have ordered bifurcation of *Monell* issues from the individual liability claims. See *Banks v. Mortimer*, 4:18-cv-07391 HSG (Judge Gilliam, Jr. bifurcating derivative liability claims from individual claims (*See* ECF 65, filed 4-23-21); *Silva v. City of San Pablo*, 3:16-cv-04360 VC (Your Honor bifurcated all *Monell* claims for discovery and trial) (*See* ECF 16). Bifurcation is necessary and appropriate here.

### 1. Bifurcation of Individual Liability Claims from the *Monell* and Supervisory Liability Claims Would Facilitate Disposition of the Issues and Would Be in the Interest of Judicial Economy.

A municipality may be liable for causing cognizable injury under 42 U.S.C. § 1983 if the injury is a result of a custom or policy of the municipality. *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 690-91 (1978). However, when *Monell* claims are asserted in conjunction with claims against individual defendants, courts often bifurcate them in the interests of "convenience and judicial economy." *See Quitanilla v. City of Downey,* 84 F. 3d 353, 356 (9th Cir. 1996). "Bifurcation is conducive to expedition and economy because a finding that the individual officers did not deprive [the plaintiff] of his constitutional or statutory rights or negligently cause his death is dispositive of plaintiffs' claims against the City and Chief[.] *Est. of Lopez v. Suhr,* No. 15-CV-01846-HSG, 2016 WL 1639547, at *6 (N.D. Cal. Apr. 26, 2016) (quoting *Boyd v. City and Cnty. Of San Francisco,* No. C-0405459, 2006 WL 6800556, at *2 (N.D. Cal. Mar. 14, 2006)). This is so since "neither *Monell*…nor any other of [the Supreme Court's] cases authorize the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded

that the officer inflicted no constitutional harm." *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986); *see also Fairley v. Luman,* 281 F.3d 913, 916 (9th Cir. 2002) ("Exoneration of [the individual officer] of the charge of excessive force precludes municipal liability for the alleged unconstitutional use of such force."); *Scott v. Henrich,* 39 F.3d 912, 916 (9th Cir. 1994) (holding, where individual officers were entitled to judgment on ground they did not use excessive force, municipality was entitled to judgment on claim municipality failed to adequately train officers). The same finding is true in regards to Plaintiff's supervisory liability claim. *See Trevino v. Gates,* 99 F.3d 911, 920-21 (9th Cir. 1996) (We have found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of *the acts of others who caused the constitutional violation."*) (italics added). *Id.*

Here, Defendants contemplate that some possible outcomes of this case include: (1) the Court and/or jury will find there has been no constitutional violation; (2) the Court and/or jury will find that a constitutional violation has occurred (but the individual officers are entitled to qualified and/or state law immunity); or (3) the Court and/or jury will find that a constitutional violation has occurred and the individual officers are not entitled to qualified immunity. Bifurcation is appropriate in the first scenario because *Monell* liability will only attach if the Plaintiffs successfully prove they suffered from a violation of his constitutional rights. *Dadisman v. Cnty. Of L.A.,* No. CV 18-10119 PSG (PLAx), 2021 U.S. Dist. LEXIS 58092 (C.D. Cal. Jan. 5, 2021). In other words, the process of determining *Monell* and supervisory liability will not be necessary if the jury first determines that the Plaintiffs did not suffer from a constitutional violation. *Id.*

Along that same line, bifurcation is appropriate in the third scenario as well. A finding of a constitutional violation and a determination that the officers are not entitled to qualified immunity will also dispose of the need for a second trial since, "under California law, a municipality is liable for compensatory damages awarded against the individual" employees. Cal. Gov't Code § 825 (a); *Dadisman v. Cnty. Of L.A.,* No. CV 18-10119 PSG (PLAx), 2021 U.S. Dist. LEXIS 58092 (C.D. Cal. Jan. 5, 2021). Further, In the event compensatory damages are awarded against the individual officers in this case, the municipality will be liable as well in terms of respondeat superior for state claims and also would cover constitutional findings and damages (other than punitive damages).

Further, Plaintiffs cannot recover additional damages for any *Monell* or supervisory liability claims as Plaintiffs' damages are what Plaintiffs' damages are for the claimed unlawful police contact. Therefore, bifurcating trial and discovery would enable efficiency and the preservation of judicial economy, since the first trial will likely be dispositive of the second trial, no matter the outcome.

### 2. The Defendants' Request to Bifurcate Should Be Granted to Avoid the Defendants Suffering Undue Prejudice.

FRCP 42(b) considers the avoidance of prejudice as a reason for bifurcation. This is because in § 1983 claims that involve both individual and municipal defendants, the evidence that supports *Monell* liability may be prejudicial to the individual defendants. *Ryan v. City of Salem,* No. 3:16-cv-0565-AC, 2017 U.S. Dist. LEXIS 85753 (D. Or. June 5, 2017); *Atencio v. Arpaio,* No. CIV. 12-2376-PHX-PGR, 2013 U.S. Dist. LEXIS 137783, 2013 WL 5327382, at *4-5 (D. Ariz. Sept. 24, 2013) (In excessive force case that arose in a county jail, allegations that supported the *Monell* claim against the County included incidents that occurred more than twenty years before and included "a culture of cruelty" and past court orders and consent decrees involving the jail. The *Atencio* court ultimately granted bifurcation on account of undue prejudice since proof of the *Monell* allegations could encourage a jury to decide the case according to past violations, rather than the evidence that was presented in that case). This makes it clear that there is an inherent risk that the jury will consider the past behavior of the City generally, and other officers, and incorrectly apply their findings to the individual officers in the current case, resulting in undue prejudice to the individuals relating to the incident involving Decedent.

Another example can be found in *Quintanilla*, where the Court granted bifurcation relying in part on the prejudice to the individual defendants. *Quintanilla* included both individual and municipal § 1983 claims based on a police-dog attack, and the Plaintiff attempted to use evidence of attacks that were more severe than his own to prove a constitutional violation. *Quintanilla v. City of Downey,* 84 F.3d 353, 356, (9th Cir. 1996)). Bifurcation is important where the evidence supporting the *Monell* liability claims will likely cause undue prejudice to the individuals.

### 3. Bifurcation of Individual Liability Claims and *Monell* and Supervisory Claims Is Necessary to Avoid Jury Confusion.

Bifurcation of the trial and discovery of the individual liability claims is necessary to avoid

the risk of jury confusion. First, if these proceedings were not bifurcated, the jury may confuse the factual accounts of previous use of force incidents and/or matters involving the City with the factual accounts giving rise to this specific incident. Secondly, if this evidence is allowed discovered and then allowed at trial, there is a strong risk that there will be a need to provide additional evidence by the Defendants to explain the prior incidents, leading to a greater chance of confusing the jury as to the main issue in this case, making a trial (or several trials) within a trial. Allowing the trial to go forward without bifurcating these liability claims risks the jury mistakenly applying the City's older policies to the officers' conduct with regard to the Decedent, years and years later.

### 4. Bifurcation Would Also Conserve Resources of the Public Entity Defendants

Bifurcation of the trial and discovery of the individual liability claims from the *Monell* and supervisory liability claims, and specifically the discovery pertaining to these issues, would also conserve the time and resources of the public entity defendants. *Monell* discovery is very often invasive and broad, requiring many hours of the attorneys and public entity clients, to assist in responding to the excessive and broad discovery. After all, "[o]ne of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery pending resolution of potentially dispositive preliminary issues." *Ellingson Timber Co. v. Great N. Ry. Co.,* 424 F. 2d 497, 499 (9th Cir. 1970). For all the above reasons, if the *Monell* and supervisory claims survive this Rule 12 motion, the Court should strongly consider bifurcating trial and/or discovery in this matter.

The undersigned attests that permission in the filing of this document(s) has been obtained from the signatory below which shall serve in lieu of the actual signatures on the document(s).

Dated: October 29, 2021          MCNAMARA, NEY, BEATTY, SLATTERY,
                                 BORGES & AMBACHER LLP


                                 By:   /s/ Blechman, Noah G.
                                    Noah G. Blechman
                                    Attorneys for Defendants
                                    CITY OF ANTIOCH, TAMMANY BROOKS, JAMES
                                    PERKINSON, ARTURO BECERRA, DANIEL
                                    HOPWOOD, and NICHOLAS SHIPILOV