1  NOAH G. BLECHMAN (State Bar No. 197167)
   noah.blechman@mcnamaralaw.com
2  McNamara, Ney, Beatty, Slattery,
   Borges & Ambacher LLP
3  3480 Buskirk Avenue, Suite 250
   Pleasant Hill, CA 94523
4  Telephone: (925) 939-5330
   Facsimile:  (925) 939-0203
5
6  Attorneys for Defendants
   CITY OF ANTIOCH, TAMMANY BROOKS,
7  JAMES PERKINSON, ARTURO BECERRA,
   DANIEL HOPWOOD, and NICHOLAS SHIPILOV

8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  MARIA CASSANDRA QUINTO-COLLINS, individually and as successor-in-interest to Decedent ANGELO QUINTO; and ISABELLA COLLINS, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ANTIOCH,  a municipal corporation; TAMMANY BROOKS, individually; JAMES PERKINSON, individually and in his official capacity as a police officer for the CITY OF ANTIOCH; ARTURO BECERRA, individually and in his official capacity as a police officer for the CITY OF ANTIOCH; DANIEL HOPWOOD, individually and in his official capacity as a police officer for the CITY OF ANTIOCH; NICHOLAS SHIPILOV, individually and in his official capacity as a police officer for the CITY OF ANTIOCH; and DOES 5-50, inclusive,<br><br>Defendants. | Case No. C21-6094 VC<br><br>**DECLARATION OF NOAH G. BLECHMAN IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PORTIONS OF PLAINTIFFS' COMPLAINT FOR DAMAGES PURSUANT TO FRCP 12(b)(6) AND, ALTERNATIVELY, MOTION FOR BIFURCATION IF SUCH CLAIMS SURVIVE**<br><br>Date:   December 9, 2021<br>Time:   10:00 A.M.<br>Ctrm:   4, 17th Floor<br>Judge:  Vince Chhabria |

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

I, Noah G. Blechman, declare as follows:

1.     I have personal knowledge of each matter stated herein for the following reasons: I am an attorney at law duly licensed to practice before the courts of the State of California and am a partner at the law firm of McNamara, Ney, Beatty, Slattery, Borges & Ambacher, LLP; attorneys of record for the Defendants in this action.

1.     Attached hereto as **Exhibit A** is a true and correct copy of the Complaint (ECF 1), filed on August 8, 2021.


I declare under penalty of perjury that the foregoing is true and correct.

The undersigned attests that permission in the filing of this document(s) has been obtained from the signatory below which shall serve in lieu of the actual signatures on the document(s).


Executed October 29, at Pleasant Hill, California.


By: ____/s/ Noah G. Blechman_____
Noah G. Blechman
Declarant

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

DEC. OF BLECHMAN IN SUPPORT OF DEFENDANTS' MTD
PORTIONS OF PLAINTIFFS' COMPLAINT PURSUANT TO
12(b)(6)/MOTION FOR BIFURCATION - 4:21-cv-06094 KAW

# EXHIBIT A

JOHN L. BURRIS, Esq., SBN 69888
BENJAMIN NISENBAUM, Esq., SBN 222173
JAMES COOK, Esq., SBN 300212
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
John.Burris@johnburrislaw.com
bnisenbaum@gmail.com
James.Cook@johnburrislaw.com

Attorneys for Plaintiffs,
MARIA CASSANDRA QUINTO-COLLINS, and
ISABELLA COLLINS

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA CASSANDRA QUINTO-COLLINS, individually and as successor-in-interest to Decedent ANGELO QUINTO; and ISABELLA COLLINS, individually,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ANTIOCH, a municipal corporation; TAMMANY BROOKS, individually; JAMES PERKINSON, individually and in his official capacity as a police officer for the CITY OF ANTIOCH; ARTURO BECERRA, individually and in his official capacity as a police officer for the CITY OF ANTIOCH; DANIEL HOPWOOD, individually and in his official capacity as a police officer for the CITY OF ANTIOCH; NICHOLAS SHIPILOV, individually and in his official capacity as a police officer for the CITY OF ANTIOCH;  and DOES 5-50, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR DAMAGES**<br>(42 U.S.C § 1983; and pendent tort claims)<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.     This is an action for damages brought pursuant to Title 42 U.S.C. §§ 1983 and 1988, and the Fourth Amendment to the United States Constitution, under California Civil Code Section § 52.1, and under the common law of California. It is alleged that these violations and torts were committed during the course and scope of the above-mentioned law enforcement officers' employment with the aforementioned government agencies and DOES 1-50.

## JURISDICTION AND VENUE

2.     This action arises under Title 42 of the United States Code, § 1983. Title 28 of the United States Code, §§ 1331 and 1343 confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in California, which is within the judicial district of this Court. This Court also has supplemental jurisdiction over Plaintiffs' state law causes of action under 28 U.S.C. § 1367.  Supplemental Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1367 over the State law claims which are so related to federal claims in the action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.  Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are believed to reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## PARTIES

3.     Plaintiff MARIA CASSANDRA QUINTO-COLLINS ("PLAINTIFF" or "QUINTO-COLLINS") has been and is a resident of California and a Lawful Permanent Resident of the United States. She brings this action on her own behalf and as successor-in-interest to her son, Decedent ANGELO QUINTO. ANGELO QUINTO, a U.S. Navy veteran who was honorably discharged in March 2019, was thirty years old when Defendants killed him by asphyxiating him during prone restraint at the QUINTO-COLLINS' family residence. He died unmarried, intestate and without children.

4.     Plaintiff ISABELLA COLLINS ("PLAINTIFF" or "COLLINS") has been and is a resident of California and a United States Citizen. She is the biological sister of Decedent ANGELO QUINTO and also resided in the QUINTO-COLLINS family residence.

5.      Defendant CITY OF ANTIOCH ("CITY") is an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant CITY has possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the CITY OF ANTIOCH Police Department and its tactics, methods, practices, customs and usage. At all relevant times, Defendant CITY was the employer of Defendant police officers, individually and as peace officers.

6.      Defendant TAMMANY BROOKS ("BROOKS") was employed by Defendant CITY as Chief of Police for the CITY. He is being sued in his individual capacity.

7.      Defendant JAMES PERKINSON ("PERKINSON") is and was at all times mentioned herein employed as a police officer for Defendant CITY. He is being sued in his individual capacity and his official capacity as a police officer for Defendant CITY.

8.      Defendant ARTURO BECERRA ("BECERRA") is and was at all times mentioned herein employed as a police officer for Defendant CITY. He is being sued in his individual capacity and his official capacity as a police officer for Defendant CITY.

9.      Defendant DANIEL HOPWOOD ("HOPWOOD") is and was at all times mentioned herein employed as a police officer for Defendant CITY. He is being sued in his individual capacity and his official capacity as a police officer for Defendant CITY.

10.      Defendant NICHOLAS SHIPILOV ("SHIPILOV") is and was at all times mentioned herein employed as a police officer for Defendant CITY. He is being sued in his individual capacity and his official capacity as a police officer for Defendant CITY.

11.      Plaintiffs are ignorant of the true names and capacities of Defendants DOES 5 through 50 inclusive, and therefore sues these defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend this Complaint to state the names and capacities of DOES 5-50, inclusive, when they have been ascertained.

**ADMINISTRATIVE PREREQUISITES**

12.     Plaintiffs are required to comply with an administrative tort claim requirement under California Government Code Section 910. Plaintiff submitted a claim under the CA Tort Claims Act on February 18, 2021. The claim was not acted on by Defendant CITY, and was therefore rejected by operation of law 45 days later.  Plaintiffs have exhausted all administrative remedies pursuant to California law.

**FACTUAL ALLEGATIONS**

13.     On December 23, 2020 at approximately 11:12 p.m. at Plaintiffs' and Decedent's residence at 1909 Crestwood Drive, Antioch, CA 94509, Defendant CITY OF ANTIOCH police officers PERKINSON, BECERRA, HOPWOOD and SHIPILOV responded to a call for emergency help for placed by Plaintiff ISABELLA COLLINS to Antioch 911 dispatch.

14.     Several months previously, Decedent ANGELO QUINTO suffered a head injury after being jumped and beaten by unknown assailants.  That incident caused a change in Mr. QUINTO's behavior, including infrequent episodes of paranoia and agitation.  Mr. QUINTO had no significant mental health history prior to that incident. Approximately two months  before the subject-incident, Mr. QUINTO was 5150'd by Antioch Police officers as a potential danger to himself or unable to care for himself by reason of a mental impairment after he, while alone, had locked himself out of the QUINTO-COLLINS' family house and grew agitated enough that police were called. No one other than Mr. QUINTO was injured in that earlier incident. Based on statements made by the Defendant Officers at the scene responding to the instant December 23, 2020 incident, each Defendant Officer was aware of that incident, and one or more of the Defendant Officers had personally responded to Mr. QUINTO during that prior incident when he was 5150'd. Each Defendant Officer was on notice that Mr. QUINTO had a serious ongoing mental impairment at the time they responded to the December 23, 2020 subject-incident.

15.      Plaintiff COLLINS reported to 911 that her brother was becoming aggressive and threatening and was physically restraining their mother, Plaintiff QUINTO-COLLINS.  Plaintiff QUINTO-COLLINS spoke on the call with 911 dispatch as well, and corrected her daughter, saying in the background "No, he's physically…". In fact, Plaintiff QUINTO-COLLINS was

restraining her son, Mr. QUINTO. Mr. QUINTO had become agitated and was concerned that his mother and sister might leave him alone that night. Since the incident in which he was beaten, Mr. QUINTO had repeatedly become agitated and fearful when left alone. Plaintiffs QUINTO-COLLINS and her daughter, Plaintiff COLLINS, were home with Mr. QUINTO on the evening of December 23, 2020. Beginning at about 11:00 p.m., when either would attempt to leave Mr. QUINTO alone in a room, Mr. QUINTO would become fearful and agitated, and would begin grabbing onto either his sister or his mother. Mr. QUINTO was known to his family as being especially fearful of police, though he had no significant criminal history, and was especially fearful of being killed.

16.     911 dispatch asked Plaintiff COLLINS if her brother had access to any weapons in the house. Plaintiff COLLINS told dispatch that he had grabbed for a hammer, and that she had taken the hammer herself. Mr. QUINTO had not threatened anyone with the hammer.

17.     Initially Defendant Officers PERKINSON and BECERRA responded to the call. On arrival, Plaintiff COLLINS showed the Defendant Officers PERKINSON and BECERRA into the QUINTO-COLLINS' residence and directed them to Plaintiff QUINTO-COLLINS's room, where Plaintiff QUINTO-COLLINS was holding her son on the floor in a hug, with her chest against his chest, her hands clasped around his back. Mr. QUINTO was not attacking anyone, and had calmed down significantly during the several minutes that Plaintiff QUINTO-COLLINS had held him in this way. Mr. QUINTO was uninjured at this time. Defendant Officers PERKINSON and BECERRA only asked Plaintiff COLLINS "who's restraining who?" They asked no other questions, and asked questions about the circumstance that generated their response. One of the two Defendant Officers simply stated in reference to Plaintiff QUINTO-COLLINS: "Your mom is strong." Defendant Officers PERKINSON and BECERRA began to pull Mr. QUINTO out of Plaintiff QUINTO-COLLINS's grasp and put him on his stomach, in a prone position.

18.     Mr. QUINTO pleaded, "Please don't kill me!" at least two times upon being put in a prone position. The Defendant Officers responded that they were not going to kill him. Defendant Officers handcuffed Mr. QUINTO behind his back. One of the Defendant Officers

then crossed Mr. QUINTO's legs behind him and bent his legs upward toward his back. Mr. QUINTO cried out in pain. Another Defendant Officer placed his right leg on the back of Mr. QUINTO's neck, and told Plaintiffs: "This is what we do to keep them calm." One of the two initial responding Defendant Officers discussed with Plaintiff QUINTO-COLLINS why they had been called, and then at about 11:16 p.m. called for an ambulance to come to perform a 5150 of Mr. QUINTO after determining that he was suffering from a mental health crisis. One of the two initial responding Defendant Officers placed his right leg on the back of Mr. QUINTO's neck, and told Plaintiffs: "This is what we do to keep them calm." Mr. QUINTO became motionless early into the restraint, but the restraint continued for several minutes after he became motionless. Also at about 11:16 p.m. another two defendant officers, Defendants HOPWOOD and SHIPILOV arrived at the residence. During the restraint, the Defendant Officer with his knee on the back of Mr. QUINTO's neck appeared to grow tired and switched positions with the Defendant Officer who had been holding Mr. QUINTO's legs. That Defendant Officer then put his knee against Mr. QUINTO's neck. Two Defendant Officers continued restraining Mr. QUINTO. All four Defendant Officers participated in the extended manual prone restraint of Mr. QUINTO. Mr. QUINTO began to bleed from his mouth. Mr. QUINTO never physically resisted the defendants, and was still shortly after the Defendant Officers began their prone restraint. Nevertheless, Defendant Officers continued the prone restraint for several more minutes. After approximately five minutes of prone restraint, Mr. QUINTO appeared to become totally unresponsive. He appeared to be lifeless. Plaintiff QUINTO-COLLINS asked the Defendant Officers if her son was dead. Defendant Officers did not respond to her, but continued restraining Mr. QUINTO.

19.     Defendant Officers continued the prone restraint of Mr. QUINTO until paramedics arrived at the scene at about 11:22 p.m. Defendant Officers turned Mr. QUINTO onto his left side, revealing of puddle of blood where his head had been and blood coming from Mr. QUINTO's mouth area. Though Mr. QUINTO was obviously unresponsive or dead, Defendant Officers began asking him questions. Mr. QUINTO did not respond. Mr. QUINTO had no pulse and was not breathing when the paramedics arrived. Mr. QUINTO had been in

cardiac arrest for a significant amount of time prior to their arrival. Paramedics noted in their report it was unknown how long Mr. QUINTO was "down", meaning they did not know how long prior to their arrival Mr. QUINTO had become unresponsive. The paramedics moved him to a stretcher and began to administer CPR to Mr. QUINTO while wheeling him to an ambulance. At about 11:29 p.m. Defendant Officers notified dispatch that CPR was in progress, thought it had begun minutes before, not later than 11:25 p.m.

20.     Defendant Officers at the scene falsely reported to the paramedics that Mr. QUINTO was combative upon their arrival, and explained that was the reason they conducted a prone restraint of Mr. QUINTO.  Mr. QUINTO was not combative or resistive with the officers. Defendant Officers told paramedics they had put Mr. QUINTO on a §5150 hold before they decided to use force to restrain him.  Defendant Officers at the scene also falsely told paramedics that Mr. QUINTO was using methamphetamines.  A toxicology screen taken shortly after Mr. QUINTO was admitted to the hospital showed there were no drugs or alcohol in his system. Plaintiffs allege Defendant Officers made this false claim knowing they had asphyxiated Mr. QUINTO to death and demonstrates a consciousness of guilt on their part.  This was the beginning of a quixotic search for drugs in Mr. QUINTO's system to try to cover up Defendant Officers use of unreasonable force in asphyxiating Mr. QUINTO to death during their restraint of him[1].

21.     Plaintiffs QUINTO-COLLINS and COLLINS were contemporaneously aware of the Defendant Officers' wrongful conduct against their respective son and brother, ANGELO QUINTO, and suffered severe emotional distress by witnessing the above-described wrongful conduct of defendants.

22.     All police officers are trained to avoid asphyxiating a person during restraint, and are trained in particular to avoid prolonged prone restraint.  Defendant Officers conducted an unreasonably prolonged prone restraint of Mr. QUINTO, which included impermissible pressure

---

[1] Like former President Trump's search for election fraud or O.J. Simpson's search for the "real killer" of Nicole Brown, months later, on March 3, 2021, Defendant BROOKS, the Chief of Police, claimed in a press conference he called specifically to address allegations of police misconduct in Mr. QUINTO's death that toxicology testing was currently being expanded because the coroner's office was aware of past drug use by Mr. QUINTO.

against his neck and back, during the unreasonable, deadly prone restraint of Mr. QUINTO. The above-noted actions of defendants causing the prone restraint asphyxiation death of Mr. QUINTO have been clearly established as a U.S. Constitutional Fourth Amendment violation at least since 2003.

23. Defendant Officers were required to take Mr. QUINTO's known mental impairment into consideration in responding to him. Defendants failed to do so, and failed to utilize any de-escalation tactics, instead choosing to unreasonably use force and prone restraint. Defendant Officers then lied in providing a justification for their use of force to paramedics, falsely claiming Mr. QUINTO had to be restrained because he became combative with them.

24. Mr. QUINTO was transported to Sutter Delta Medical Center, where he arrived at about 11:43 p.m. Though his body was resuscitated, he had suffered an anoxic brain injury (one caused by a lack of oxygen to the brain as a result of asphyxiation) during the subject-incident restraint and never regained consciousness. On admission his prognosis was noted to be "critical and guarded." Roughly eight hours later, in a consultation with his critical care specialist, Mr. QUINTO's prognosis was noted to be "extremely poor." At some point after Mr. QUINTO was asphyxiated by defendants, he vomited and aspirated the vomit[2]. Vomiting is a reflexive action that can happen while a person's brain is dying. He was pronounced dead at the hospital on December 26, 2020[3]. Medical staff at Sutter Delta Medical Center noted, just as the paramedics

---

[2] Mr. Quinto's body temperature was normal when paramedics found him and transported him. Later, while in the hospital, Mr. Quinto developed aspiration pneumonia noted at 7:06 on December 24th, from the aspirated vomit and a low-grade fever of 100.4 degrees from the pneumonia noted at 7:32 p.m., the evening of December 24th. He exhibited no sweating. Mr. Quinto was placed on hypothermia protocol at 2:29 a.m. on December 24th, less than three hours after admission to the hospital, in order to help protect his brain against the high likelihood he had suffered an anoxic brain injury. There is no evidence he suffered hyperthermia at any time, he was relatively lucid until he was killed, and there is no evidence he suffered from the purported Excited Delirium Syndrome.

[3] Though Mr. Quinto was pronounced dead on December 26, 2020, it was as a consequence of anoxic encephalopathy (damage to the brain caused by lack of oxygen, evidenced in part by the spontaneous twitching noted after Mr. Quinto's hospital admission and post anoxic seizures, also noted at 7:32 p.m. on December 24th, in a consult with Dr. John Karan) caused by restraint asphyxia. A sequalae of other diagnosis followed Mr. QUINTO's resuscitation, but all were the consequence of asphyxiation caused brain damage. The anoxic brain injury was confirmed on December 25th by Dr. Karan. Brain cells are far more sensitive to oxygen deprivation than heart cells. The prognosis for Mr. Quinto's recovery after he was without oxygen or blood flow to the brain from his heart being stopped by asphyxiation during restraint was noted to be "very poor" after admission to the hospital, and only deteriorated from then on. The final diagnosis provided by Delta Medical Center on December 26th by Dr. Hsu was

noted, that Defendant Officers said Mr. QUINTO became combative with them, requiring force to be used to restrain him.

25.     Defendant CITY failed to notify the public of the in-custody death of Mr. QUINTO.  While Plaintiffs and the rest of Mr. QUINTO's family desperately tried to get information from the hospital about Mr. QUINTO's status, Defendant CITY and its police department stonewalled Plaintiffs, and did not inform them of Mr. QUINTO's condition, apart from an initial communication from a doctor (Dr. Hsu, Mr. QUINTO's critical care doctor) who expressed surprise that Mr. QUINTO was still alive. Dr. Hsu noted on December 24 at 1:46 p.m. that she called Plaintiff QUINTO-COLLINS and informed her about Mr. QUINTO's shock, renal failure, rectal bleeding, rhabdomyolysis, and his possible anoxic brain injury. Dr. Hsu stated they would continue supportive care, and that Plaintiff QUINTO-COLLINS agreed to a DNR if Mr. QUINTO had another CPR arrest.  In short, Mr. Quinto's prognosis was bleak.  An unknown Antioch Police officer present at the QUINTO house responded to that by claiming that the doctor was lying, that he had just been at the hospital and that Mr. QUINTO was getting better.

26.     Furthermore, according to a note made in Mr. QUINTO's medical records at 2:29 a.m. on December 24th by Dr. Anthony Carandang, Antioch Police Detective Loren Bledsoe initially directed hospital staff to not communicate with Mr. QUINTO's family, keeping them in the dark about Mr. QUINTO's condition for nearly a day. Mr. QUINTO's step-father, Robert Collins had made several telephonic inquiries of the hospital in the hours after the subject-incident to ascertain Mr. QUINTO's condition. A medical note made at 10:09 a.m. on December 24th states that Mr. Collins had called twice asking for information about his son (Though Mr. Collins never adopted Mr. QUINTO, they had a true father and son relationship, Mr. QUINTO called Mr. Collins "Dad") and appears to indicate that he communicated with at least one doctor. The note states "this is different circumstance. No information is given to anybody yet."

---

"cardiac arrest, cause unspecified". The private autopsy conducted at plaintiffs' expense found the cause of the cardiac arrest, and thus the cause of the anoxic brain injury and Mr. QUINTO's death, to be restraint asphyxia.

Notwithstanding Detective Bledsoe's directive, Dr. Hsu eventually updated Plaintiff QUINTO-COLLINS the afternoon of December 24th with Mr. QUINTO's dire condition.

27.      Police officers for Defendant CITY obtained a search warrant for Mr. QUINTO's blood and toxicology analysis, as well as a search warrant for the QUINTO-COLLINS' residence. ANTIOCH police officers ransacked the QUINTO-COLLINS' home in executing the search warrant, finding no evidence of any criminal activity[4]. A toxicology screen taken from Mr. QUINTO at the hospital showed there were no common drugs in his system when he died. Plaintiffs conducted a private autopsy, which found that Mr. QUINTO died as a direct result of restraint asphyxiation.

28.      On or about March 3, 2021, after Plaintiffs filed a claim and made public the death of Mr. QUINTO, Defendant BROOKS lead a press conference regarding the subject-incident killing of Mr. QUINTO. At the press conference, Defendant BROOKS misled the public about what defendants did and how Mr. QUINTO died, in order to create a false impression that Defendant Officers did not kill Mr. QUINTO. Defendant BROOKS falsely claimed there were no signs of asphyxiation exhibited by Mr. QUINTO's body, when in fact there were significant petechial hemorrhages in Mr. QUINTO's eyes and indicators of asphyxiation in Mr. QUINTO's medical records. Defendant BROOKS falsely claimed that an officer only had a knee across a portion of Mr. QUINTO's shoulder blade for a few seconds, and falsely claimed that "at no point did any officer use a knee or other body part to gain leverage or apply pressure to Angelo's head, neck or throat, which is outside of our policy and training." Plaintiffs observed that two Defendant Officers had their knees against Mr. QUINTO's neck at different times for extended periods of time. Defendant BROOKS claimed that Mr. QUINTO's injuries were consistent with a struggle with his family and the Defendant Officers, when Mr. QUINTO was not injured at all while his mother held him, and did not suffer injuries until after Defendant Officers began restraining him. Though Defendant BROOKS announced that Mr.

---

[4] The paramedic report noted that the call to the QUINTO-COLLINS' residence during the subject-incident was for a "psychiatric problem". There was no evidence of criminal activity. This was purely a mental health crisis until the Defendants arrived and killed Mr. QUINTO. Any search warrant issued in this case should have been directed at the Defendants and the Antioch Police Department, not at the Plaintiffs' residence and Mr. QUINTO.

QUINTO had no broken bones, and no signs of strangulation, he omitted the petechial hemorrhages in Mr. QUINTO's eyes and the blood from Mr. QUINTO's mouth which support a finding of asphyxiation with his head being pinned down on the ground. Defendant BROOKS contended that toxicology testing was being expanded due to an awareness of past drug use. Apparently, no drugs had been found yet in Mr. QUINTO's tested samples. At the press conference, defendant BROOKS claimed that as a matter of transparency the coroner's findings would be revealed at a coroner's inquest. To date, more than 7 months after Mr. QUINTO's death, the Coroner's Inquest remains unscheduled.

29.    Plaintiffs allege that Defendant BROOKS is leading a cover-up of the actual cause of Mr. QUINTO's death, desperately seeking alternative causes of death to the petechial-hemorrhage indicated, factually-supported and medically-founded cause of death of restraint asphyxiation. Defendant BROOKS also failed to account for Defendant Officers' misrepresentations to paramedics that Mr. QUINTO became combative requiring them to forcibly restrain him. Defendant BROOKS is thus a conspirator after the fact in the death of Mr. QUINTO[5] for attempting to conceal the true cause of Mr. QUINTO's death.

29.    Plaintiffs allege that the killing of Decedent was malicious, unrelated to legitimate law enforcement purposes, and was done with a purpose to harm Decedent, since no significant force was needed, Decedent never resisted, and Defendants engaged in an extraordinarily prolonged prone restraint of a handcuffed man who committed no crime and only needed emergency mental health help. Furthermore, certainly since the death of George Floyd long before the subject-incident, every officer was on notice that putting a knee in a person's neck during prone restraint is far outside the lines of acceptable police conduct and can be lethal. Plaintiffs allege Defendants' misconduct was willful and done to punish Mr. QUINTO, instead of helping him when it was obvious to anyone he only needed mental health help.

30.    Plaintiffs further allege that Decedent's death was the proximate result of Defendant

---

[5] Defendant BROOKS read from a prepared statement at his press conference that culminated in his purported expression of his and the Antioch Police Department's deepest condolences to the QUINTO family. The QUINTO family does not accept the sincerity of this expression, given Defendant BROOKS's omission of evidence supporting a finding of restraint asphyxiation, and the apparent misrepresentations made by Defendant BROOKS.

CITY's and BROOKS' failure to reasonably train their police officers in the proper and reasonable use of force, failure to reasonably train their police officers in responding to mentally impaired people, and using force in a manner to reasonably avoid killing people. Plaintiffs further allege that these substantial failures reflect Defendant CITY's and BROOKS' policies implicitly ratifying and/or authorizing the use of excessive force by its police officers and the failure to reasonably train police officers employed by Defendant CITY in the use of force and in responding to mentally impaired people.

31. The killing of decedent ANGELO QUINTO described herein was brutal, malicious, and done without just provocation or cause, proximately causing Plaintiff's injuries and resulting damages.

## DAMAGES

32. Plaintiffs were physically, mentally, emotionally and financially injured and damaged as a proximate result of Decedent ANGELO QUINTO's wrongful death, including, but not limited to, the loss of decedent's familial relationships, comfort, protection, companionship, love, affection, solace, and moral support. In addition to these damages, Plaintiffs are entitled to recover for the reasonable value of funeral and burial expenses, pursuant to C.C.P. Sections 377.60 and 377.61.

33. Plaintiffs are entitled to recover wrongful death damages pursuant to C.C.P. Sections 377.60 and 377.61 and Probate Code Section 6402(b).

34. Pursuant to C.C.P. Sections 377.30, 377.32, and 377.34, plaintiffs are further entitled to recover for damages incurred by decedent before he died as the result of being assaulted and battered, for deprivation without due process of decedent's right to life, and to any penalties or punitive damages to which decedent would have been entitled to recover, had he lived. Plaintiffs are further entitled to recover for Decedent's own pain and suffering and emotional distress incurred as a consequence of Defendants' violations, preceding Decedent's death.

35. The conduct of the defendant officers was malicious, wanton, and oppressive.

Plaintiffs are therefore entitled to an award of punitive damages against said individual defendants.

36.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights, and the rights of decedent, under the law.  Plaintiffs are therefore entitled to recover all attorneys' fees incurred in relation to this action pursuant to Title 42 United States Code section 1988.

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)
**(Plaintiff MARIA CASSANDRA QUINTO-COLLINS as successors-in-interest to Decedent ANGELO QUINTO against Defendants BROOKS, PERKINSON, BECERRA, HOPWOOD, SHIPILOV, and DOES 5-50)**

37. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 36 of this Complaint.

38.     Defendants PERKINSON, BECERRA, HOPWOOD, SHIPILOV and DOES 1-50 acted under color of law by killing decedent without lawful justification and subjecting decedent to excessive force thereby depriving Plaintiff and the decedent of certain constitutionally protected rights, including, but not limited to:

a.   The right to be free from unreasonable searches and seizures by Defendants PERKINSON, BECERRA, HOPWOOD, and SHIPILOV's use of excessive force in unreasonably restraining and killing Decedent, and in Defendant BROOKS's efforts to conceal the violations by said defendants and participate in an after-the-fact conspiracy with said defendants to conceal the true cause of Decedent's death, which was caused by Defendants PERKINSON, BECERRA, HOPWOOD and SHIPILOV.

b.     The right to medical care as Defendants PERKINSON, BECERRA, HOPWOOD, and SHIPILOV were on clear notice Decedent required

on their arrival, and further needed when Defendants asphyxiated Decedent over a several minutes long prone restraint by Defendants, turning a psychiatric emergency into a deadly medical emergency caused by Defendants in violation of substantive Due Process guarantees of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
**(Violation of Plaintiffs' Civil Rights to Familial Relationship - 42 U.S.C. § 1983
Plaintiff MARIA CASSANDRA QUINTO-COLLINS against Defendants PERKINSON,
BECERRA, HOPWOOD, SHIPILOV, and DOES 5-50)**

39. Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 38 of this Complaint.

40. Defendant PERKINSON, BECERRA, HOPWOOD, SHIPILOV, and DOES 5-50, acting under color of law, and without due process of law deprived Plaintiffs of their right to a familial relationship with Decedent by use of unreasonable, unjustified deadly force (in the form of an epically long prone restraint, with knees to the neck) and violence, causing injuries which resulted in decedent's death, all without provocation, in violation of the Fourteenth Amendment to the United States Constitution. Defendants acted maliciously with an intent to harm Decedent unrelated to legitimate law enforcement purposes in killing Decedent.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## THIRD CAUSE OF ACTION
**(*Monell* - 42 U.S.C. § 1983
All Plaintiffs except ISABELLA COLLINS against Defendant CITY, BROOKS, and
DOES 5-50)**

41. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through

40 of this Complaint.

42. Plaintiffs are informed and believe and thereon allege that high ranking CITY OF ANTIOCH officials, including high ranking police supervisors such as Defendants BROOKS, DOES 5 through 50, and/or each of them, knew and/or reasonably should have known about repeated acts of misconduct by Defendant Officers PERKINSON, who previously was one of the officers involved in the police shooting death of Joshua James Peterson in 2011, and who was previously sued for violations of civil rights by Rickey McNeal in 2011.

43. Despite having such notice, Plaintiffs are informed and believe and thereon allege that Defendants BROOKS and DOES 5-50, and/or each of them, approved, ratified, condoned, encouraged, sought to cover up, and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by said police officers. In the instant matter, Plaintiffs contend Defendant BROOKS has even taken an active public role in concealing the unreasonable use of force by Defendant Officers against Mr. QUINTO, as set forth herein, by offering disinformation to the public to conceal the wrongdoing by Defendant Officers, making him an after the fact conspirator.

44. Plaintiffs are further informed and believe and thereon allege that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by Defendant PERKINSON, and by their own actions in conspiring to cover up Constitutional violations by defendants, including the use of unreasonable force against Mr. QUINTO and his actual cause of death, Defendants BROOKS and 5-50, and/or each of them, encouraged these officers to continue their course of misconduct and caused these officers' lack of training, resulting in the violation of the Plaintiffs' rights as alleged herein.

45. Plaintiffs further allege Defendant BROOKS and DOES 5-50, and/or each of them,

were on notice of Constitutional defects in their training of CITY OF ANTIOCH police officers, including, but not limited to, using excessive force, covering up the use of excessive force, unreasonable, prolonged prone restraint, use of the knee against the neck during prone restraint, and stepping on the prone-restrained subject's head during prone restraint.

46. The aforementioned acts and/or omissions and/or deliberate indifference by high ranking CITY OF ANTIOCH officials, including high ranking CITY OF ANTIOCH Police Department supervisors, Defendants BROOKS and DOES 5-50, and each of them resulted in the deprivation of Plaintiffs' constitutional rights including, but not limited to, the following:

a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

b. The right to a familial relationship, as guaranteed by the Fourteenth Amendment to the United States Constitution.

47. Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FOURTH CAUSE OF ACTION
**(Violation of Bane Act CALIFORNIA CIVIL CODE §52.1)**
**(All Plaintiffs except ISABELLA COLLINS Against All Defendants)**

48. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 47 of this Complaint.

49. Civil Code Section 52.1 authorizes suit against anyone who by threats, intimidation, or coercion interferes with the exercise or enjoyment of rights secured by the state or federal Constitutions or laws without regard to whether the victim is a member of a protected

class. Civil Code section 52(a) provides for damages up to three times actual damages but a minimum of $4,000 for each violation.

50.     Here, Defendants PERKINSON, BECERRA, HOPWOOD, and SHIPILOV threatened Mr. QUINTO's right to be free and secure from unreasonable searches and seizures by physically surrounding him grabbing him from his mother's arms to the point where Mr. QUINTO cried out for Defendants not to kill him, then conducting a unreasonable prolonged prone restraint that included putting their knees on Mr. QUINTO's neck, and weight force against his back, all while failing to take into consideration his known mentally  impaired condition. as soon as they contacted him while he was having a mental health crisis, which interfered with his right to be free and secure from unreasonable searches and seizures, Plaintiff MARIA CASSANDRA QUINTO-COLLINS right to a familial relationship with her son, and Mr. QUINTO's right to have his serious medical needs addressed.

51.     As a result, Defendants are liable for violating the Bane Act, and Defendant CITY is liable under principles of *respondeat superior* for these violations.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION
(C.C.P. Section 377.60 and 377.61)
(Wrongful Death)
(All Plaintiffs except ISABELLA COLLINS against All Defendants)

52.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 51 of this Complaint.

53. Defendants PERKINSON, BECERRA, HOPWOOD and SHIPILOV killed Decedent despite the absence of a threat to any defendant officers or any other person. They effectively restrained Mr. QUINTO to death, when Mr. QUINTO did not present any threat. Likewise, each defendant had a legal duty to Mr. QUINTO, as police officers, to discontinue

the unreasonable and deadly prone restraint, which last for approximately 5 minutes. Each Defendant had the opportunity to do so, and each defendant was on notice of Mr. QUINTO's ongoing psychiatric emergency that became a deadly medical emergency caused by the negligence and/or battery by Defendants against Decedent, but failed to do so. Defendant BROOKS conspired with these defendants after the fact to attempt to cover up the actual cause of Mr. QUINTO's death. Said defendants are liable for Mr. QUINTO's wrongful death under California law. Defendant CITY is liable under *respondeat superior.*

54. Since Decedent died intestate and without issue, Plaintiff MARIA CASSANDRA QUINTO- COLLINS is his sole successor-in-interest with standing to sue for his wrongful death under California state law.

55. As an actual and proximate result of said Defendants' negligence, and the death of Decedent, Plaintiffs sustained a pecuniary loss resulting from the loss of comfort, society, attention, services, and support of Decedent, in an amount according to proof of trial.

56. As a further actual and proximate result of said Defendant' negligence, Plaintiffs incurred funeral and burial expenses, in an amount according to proof at trial.

57. Pursuant to California C.C.P. Sections 377.60 and 377.61, Plaintiffs brought this action, and claims damages from said Defendants for the wrongful death of Decedent, and the resulting injuries and damages.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

/ /

/ /

## SIXTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)
### (Plaintiffs MARIA CASSANDRA QUINTO-COLLINS and ISABELLA COLLINS as individuals against Defendants PERKINSON, BECERRA, HOPWOOD, SHIPILOV and DOES 5 - 50)

58.  Defendants' conduct constituted negligent ant reckless disregard of the probability of causing emotional distress. Defendant Officer PERKINSON, BECERRA, HOPWOOD, SHIPILOV, and DOES 5-50 knew that Plaintiffs MARIO CASSANDRA QUINTO-COLLINS and ISABELLA COLLINS were inside the home, and conducted the fatal unreasonable, prolonged restraint, including two defendants kneeling on Mr. QUINTO's neck during the restraint. Plaintiffs heard Mr. QUINTO's screams of pain and agony and his plea for said Defendant Officers not to kill him. They killed him anyway and Plaintiffs were contemporaneously aware of it.

59.  As a result of the actions of Defendants PERKINSON, BECERRA, HOPWOOD, SHIPILOV, and DOES 5-50, Plaintiffs suffered severe or extreme emotional distress physical injuries.  Defendants' conduct was the actual and proximate cause of the emotional distress suffered by Plaintiffs.

60.  Under Government Code Section 815.2(a), Defendant CITY is vicariously liable to said Plaintiffs for injuries and damages suffered as alleged herein, incurred as a proximate result of the aforementioned wrongful conduct of said Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth

### JURY DEMAND

Plaintiffs hereby demand a jury trial in this action.

### PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1. For general damages according to proof;

2. For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;

3. For punitive damages and exemplary damages in amounts to be determined according to proof as to defendants BROOKS, PERKINSON, BECERRA, HOPWOOD, SHIPILOV, and DOES 5-50 and or each of them;

4. Any and all permissible statutory damages;

5. For reasonable attorney's fees pursuant to 42 U.S.C. §1988 and Civil Code section 52.1;

6. For cost of suit herein incurred;

7. For injunctive relief; and

8. For such other and further relief as the Court deems just and proper.

Dated: August 8, 2021        **Law Offices of John L. Burris**

/s/ *John L. Burris*
John L. Burris
Benjamin Nisenbaum
James Cook
Attorneys for Plaintiffs