UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA CASSANDRA QUINTO-COLLINS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF ANTIOCH, et al., <br><br> Defendants. | Case No. 21-cv-06094-VC <br><br> **ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION FOR BIFURCATION** <br><br> Re: Dkt. No. 13 |

Angelo Quinto died shortly after a 911 call brought officers to his home. According to the allegations in the complaint filed by his family members, Quinto was killed by the officers, who pinned him face down on the floor with a knee or leg on his neck, causing him to stop breathing. The defendants do not seek dismissal of the plaintiffs' claims against the individual officers, but they move to dismiss the *Monell* claim against the City of Antioch, arguing that the plaintiffs have not adequately alleged that any constitutional violation was the result of a municipal policy or custom. Because the plaintiffs have articulated at least one basis for *Monell* liability, the motion to dismiss the *Monell* claim is denied.

A city can be held liable under section 1983 only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). But a plaintiff need not point to an explicit policy statement announced by the department to state a *Monell* claim. Instead, courts have recognized that certain actions can serve as evidence of an official policy. This includes acts of ratification: where "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it," the high-ranking official's ratifying acts can serve as evidence that the city had a preexisting policy or custom that caused the alleged violation. *Gillette v. Delmore*, 979 F.2d

1342, 1346–47 (9th Cir. 1992); *see Silva v. San Pablo Police Department*, 805 Fed. App'x 482, 485 (9th Cir. 2020). The mere failure to discipline an officer does not rise to the level of ratification; the official's decision must have been "the product of a 'conscious, affirmative choice' to ratify the conduct in question." *Haugen v. Brosseau*, 339 F.3d 857, 875 (9th Cir. 2003) (quoting *Gillette*, 979 F.2d at 1347), *rev'd on other grounds*, 543 U.S. 194 (2004). *See, e.g.*, *Larez v. City of Los Angeles*, 946 F.2d 630, 646–48 (9th Cir. 1991).

   The plaintiffs have sufficiently alleged that the Police Chief ratified the officers' conduct. According to the allegations, the Chief intentionally covered up the actions of the individual officers by misrepresenting what happened when the officers arrived at Quinto's house. The plaintiffs allege that the Chief knew that Quinto died from asphyxiation caused by an improperly performed prone restraint but announced to the public that there were no signs of asphyxiation on Quinto's body and that the officers had not "use[d] a knee or other body part to gain leverage or apply pressure to [Quinto's] head, neck or throat." These allegations are more suggestive of ratification than the conduct that the Ninth Circuit found sufficient in *Larez*. *See* 946 F.2d at 646–48. There, the court found that the Police Chief's failure to discipline individual officers who engaged in excessive force combined with his signing of letters informing the plaintiff that complaints he had lodged with the department would not be sustained was sufficient to support the jury's finding of liability by ratification. *See id.* The allegations here are stronger as the plaintiffs allege that the Chief intentionally made statements he knew to be false to protect his officers. An intentional cover-up sends a message to individual officers that the behavior that led to Quinto's death is permissible within the department. If these allegations prove to be true, a reasonable jury could find that the Chief's statements and actions were evidence of a pre-existing policy approving the actions that led to Quinto's death. The plaintiffs' allegations are therefore sufficient to state a *Monell* claim against the City.

   Because the plaintiffs have stated a Section 1983 claim against the City by virtue of their ratification theory, it is not necessary to evaluate their failure-to-train theory at this stage. District courts sometimes assess each theory of *Monell* liability at the pleading stage and dismiss theories

that are not adequately alleged, even after finding that the plaintiff has adequately stated a *Monell* claim under one theory. *See, e.g.*, *Dizon v. City of South San Francisco*, 2018 WL 5023354, *3–6 (N.D. Cal. Oct. 16, 2018); *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 977–80 (N.D. Cal. 2017). But generally speaking, when a plaintiff makes two different arguments in support of one basis for relief, the plaintiff is not bringing two separate claims. For example, as the Supreme Court explained when addressing two different theories of liability in a takings case, the two theories were not separate claims: "They are, rather, separate *arguments* in support of a single claim—that the ordinance effects an unconstitutional taking." *Yee v. City of Escondido*, 503 U.S. 519, 535 (1992). In the context of *Monell*, the different theories of liability (e.g., ratification, failure to train) are best understood the same way—as different arguments in support of a single claim. Here, the plaintiffs have stated a claim for municipal liability, so they may pursue that claim—and different theories in support of it—in this case. The question that matters at the motion to dismiss stage is whether "a federal claim is properly presented," and the plaintiffs have properly presented a *Monell* claim here. *Id*.[1]

\* \* \*

The defendants' motion to dismiss is denied. An answer is due within 14 days of this order. The defendants' request to bifurcate the claims relating to the individual officers and the *Monell* claim is granted in the interest of judicial economy. *See* Fed. R. Civ. P. 42(b). Discovery and adjudication as to the *Monell* claim are stayed until discovery and adjudication as to the liability of the individual officers are completed.

**IT IS SO ORDERED.**

Dated: January 3, 2022

VINCE CHHABRIA
United States District Judge

---

[1] Of course, if the plaintiffs are ultimately permitted to conduct discovery on their *Monell* claim, and if they seek discovery in pursuit of a failure-to-train theory, they may need to show that their discovery request is proportional to the needs of the case.