**JOHN L. BURRIS, ESQ., SBN 69888**
**BEN NISENBAUM, ESQ., SBN 222173**
**JAMES COOK, ESQ., SBN 300212**
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Center
7677 Oakport Street, Suite 1120 Oakland, CA 94621
Telephone:  (510) 839-5200
Facsimile:  (510) 839-3882
Email:  John.Burris@johnburrislaw.com
Email:  Ben.Nisenbaum@johnburrislaw.com
Email:  James.Cook@johnburrislaw.com

Attorneys for Plaintiffs
MARIA QUINTO-COLLINS, and
ISABELLA COLLINS

**NOAH BLECHMAN, ESQ. SBN: 197167**
**MCNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP**
3480 Buskirk Ave Ste 250
Pleasant Hill, CA 94523-7310
Phone: 925-939-5330 | Fax: 925-939-0203
Email: noah.blechman@mcnamaralaw.com Attorney for Defendants,
CITY OF ANTIOCH, et al.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA QUINTO-COLLINS, et al., | CASE NO.: CASE NO.: 3:21-cv-06094-AMO |
| Plaintiff, | **JOINT INITIAL CASE MANAGEMENT CONFERENCE STATEMENT** |
| v. | **Conference Date**:  No Date Set |
| CITY OF ANTIOCH; et al., | **Trial Date**: January 8, 2024 |
| Defendants. | Hon. District Judge Araceli Martinez-Olguin |

Pursuant to the Courts Status Order at Docket No. 51, the parties submit the following Joint Status Report.

**1.** Jurisdiction and Service

Plaintiff filed this case in federal court and asserts federal question jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§1391(b).

Defendants do not contest federal jurisdiction, personal jurisdiction or venue.

**2.** Facts

**a.** Plaintiff's Contentions

The incident took place on December 23, 2020. The time was approximately 11:15 P.M. The location was 1909 Crestwood Drive, Antioch, CA 94509. Antioch Police Department officers used excessive force in the wrongful death of resident, Angelo Quinto. Maria Quinto-Collins was Quinto's mother. Isabella Collins was his sister.

The night of December 23, 2020, Mr. Quinto exhibited signs of mental distress. Ms. Collins called Antioch Police. Collins notified dispatch that Quinto attempted to grab a hammer. Officers James Perkinson and Arturo Becerra arrived. Quinto-Collins embraced Mr. Quinto to comfort him. She claimed that Quinto began to calm down. However, officers then cuffed and restrained Quinto. Bacerra restrained Mr. Quinto by using his hands to push down on Mr. Quinto's back while Quinto was in a prone position with his hands cuffed behind his back. Shipilov observed Becerra use his hands to push down on Quinto's back for at least two minutes. However, this could have lasted longer, as Bacerra was already pushing down on Quinto's back when Shipilov first saw Becerra.

Quinto expressed fear. He did not resist. However, officer Becarra put his leg on Mr. Quinto's neck. Mr. Quinto did not move significantly, if at all during this time. However, the officers continued to restrain Mr. Quinto in a prone position, with their body weight on Quinto's upper back and neck for upwards of ten minutes. Mr. Quinto bled from his mouth. After five minutes, he was not responsive. Nevertheless, defendants did not turn Mr. Quinto onto his side in a "recovery

position" until moments before paramedics entered the room, at the conclusion of the 10 plus minutes of prone restraint. Mr. Quinto was handcuffed during almost the entirety of the incident. Paramedics later transported Mr. Quinto to Sutter Delta Medical Center.

As a result, Quinto died on December 26, 2020. Mr. Quinto's died with petechial hemorrhages in his eyes, a product of asphyxiation caused by compressive prone restraint. Mr. Quinto's mother and sister suffered emotional distress from the incident.

### b.    Defendants' Contention

Defendants vehemently deny the Plaintiffs' contentions in their Complaint and as listed above in great detail.  This civil lawsuit arises from the lawful contact and interaction between several officers of the Antioch Police Department ("APD") and Decedent on December 23, 2020, after officers were called to the house due to an ongoing domestic dispute.  When officers entered the involved house, they were able to quickly control Decedent and get him into handcuffs with limited force being used.  Officers did not have to use any weapons to get Decedent into handcuffs, nor did this require any prolonged struggle.

Even after being handcuffed and laying on his stomach, Decedent continued to be agitated, was screaming and yelling and flailing his legs, and he was then put into a figure four leg lock (trained technique) to prevent from injury to Decedent or officers while another officer held Decedent under control via a knee to his shoulder area, with limited pressure.  Decedent seemed to eventually calm down.  Forms for a psychiatric hold were started to be filled out by the lead officer and an ambulance was called to transport Decedent for that psychiatric hold.  After several minutes, as ambulance personnel arrived, Decedent was not responsive so CPR was started and continued to the hospital.  At the hospital, Decedent was in a comatose state and was put on life support.  After several

days, Decedent's health was failing and he was taken off life support per family wishes and he died on December 26th.

Defendants vigorously deny using any tactics and/or positioning to restrict the breathing of Decedent. No officer placed any significant weight or weight for any significant amount of time on Decedent's body. Defendants' actions to control Decedent both before he was handcuffed and after he was handcuffed were objectively reasonable and appropriate, under both state and federal law. The involved officers are also entitled to qualified immunity and/or state law immunity for their lawful / reasonable actions.

An autopsy was performed on Decedent by the County Coroner who determined that Decedent died due to Excited Delirium Syndrome ("EDS"). EDS is characterized by a sequence of events including delirium with agitation (fear, panic, shouting, violence, and hyperactivity), sudden cessation of struggle, and respiratory arrest, most often leading to death at the end of that sequence due to fatal cardiac arrhythmias. Sudden death (including a sudden cardiac event) is very common in people exhibiting EDS. EDS can be triggered by the use of central nervous stimulant type drugs (cocaine, methamphetamine and other drugs, including prescription medications) and also people with a history of psychiatric conditions like bi-polar and/or schizophrenia. Decedent had Modafinil in his system (and it was found under his bed) which is one of the medications that can trigger EDS and is a central nervous stimulant, as well as caffeine, which is also a central nervous stimulant. The ultimate cause of death was EDS, due to "Acute Drug Intoxication with Behavior Disturbances" due to "Arrest Related Death (ARD) with Physical Exertion." The Coroner listed that the "prone position with weight on the back may have played an additional role," though Defendants contest that any significant and/or prolonged weight was placed on Decedent's back and/or any positioning by officers could have led to his medical distress and/or death. Decedent did not have any significant

injuries to his head, neck or torso and no fractures. Overall, Defendants contend that they appropriated contacted and interacted with Decedent both to get him in handcuffs and after he was in handcuffs, did not cause him any injuries and/or did not cause his death.

**3.** Legal Issues

The complaint currently asserts the following federal claims against Defendants: 1) Section 1983- wrongful death; 2) Section 1983- excessive force; 3) Section 1983 – Denial of Medical Care; 4) Section 1983- Violations of Plaintiffs' civil rights to familial relationship; 5) Section 1983 *Monell*.

These claims raise at least the following issues: 1) whether the officer defendants wrongfully caused the death of the Decedent; 2) whether the officers used excessive force on Decedent; and 3) whether the defendants violated Decedent and/or Plaintiffs' constitutional rights.

Defendants contend that qualified immunity issues are at play in this case, among other defenses.

*Monell* issues were bifurcated for discovery and for trial by Court order.

**4.** Motions

Plaintiffs do not anticipate any motions at this time.

Defendants will be evaluating the filing of a motion for summary judgment at the appropriate time.

**5.** Amendment of Pleadings

The parties do not anticipate a need to amend the pleadings.

**6.** Evidence Preservation

Both Plaintiff and Defendants are aware of their duty to preserve evidence and have taken steps to preserve all potentially relevant evidence.

**7.** Disclosures

The parties have made their initial disclosures.

**8.** Discovery

The parties have participated in fact discovery and depositions. Currently, plaintiffs are still seeking documents as part of fact discovery. The parties also have a stipulation and proposed order before the Court for an order issuing a letter for the release of international records. The parties do not currently anticipate the need for additional written discovery or depositions beyond that permitted by the Rules, but will approach the Court regarding additional discovery if necessary.

**9.** Class Actions

This is not a class-action matter.

**10.** Related cases

The parties are unaware of any related cases.

**11.** Relief

Plaintiffs are seeking general, special, and punitive damages in an unspecified amount.

**12.** Settlement and ADR

The parties attended a mediation before retired Federal Judge Raul Ramirez on May 24, 2023. The parties did not reach a settlement at that time. The parties may consider a further mediation at some point, but no other session is currently scheduled.

**13.** Consent to Judge for All Purposes

Plaintiffs do not consent to magistrate jurisdiction.

Defendants would consider consenting to an agreed upon Magistrate Judge.

**14.** Other reference

The parties do not believe the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.** Narrowing of Issues

The parties will work to narrow the issues in this case via discovery and pretrial stipulations and meet and confer efforts.

**16.** Expedited Schedule

The parties do not request an expedited schedule at this time.

**17.** Scheduling:

The parties are currently adhering to the Court's schedule that was issued on May 4, 2023,

**18.** Trial:

The parties have demanded a jury trial, expected to last approximately 7-10 days.

**19.** Disclosure of Non-Party Interested Entities or Persons:

Plaintiff:  None.

Defendants:  None.

**20.** Other matters

None at this time.

Dated:  May 31, 2023                **THE LAW OFFICES OF JOHN L. BURRIS**

/s/ *James Cook*
Ben Nisenbaum, Esq.
James Cook, Esq.
Attorneys for Plaintiffs
MARIA QUINTO-COLLINS, and
ISABELLA COLLINS

|   |   |   |
|---|---|---|
| 1 | Dated: May 31, 2023 | **MCNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP** |
| 2 | | |
| 3 | | |
| 4 | | /s/ *Noah Blechman*<br>Noah Blechman, Esq.<br>Attorney for Defendants<br>CITY OF ANTIOCH, et al. |