# EXHIBIT G

DEPOSITION OF OFFICER DANIEL HOPWOOD

```
            IN THE UNITED STATES DISTRICT COURT

       IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

                       --o0o--

MARIA QUINTO-COLLINS, et al.,)
                            )     CERTIFIED COPY
               Plaintiffs, )
                            )
            vs.            )CASE NO.: 3:21-cv-06094-VC
                            )
CITY OF ANTIOCH, et al.,    )
                            )
               Defendants. )
_____)     CERTIFIED COPY




            DEPOSITION OF OFFICER DANIEL HOPWOOD

               WEDNESDAY,  APRIL 19, 2023

                 1:32 P.M. - 3:30 P.M.
```

REPORTED BY:  KYLE RIDENOUR, RPR, CSR No. 14473

1

1              INDEX OF EXAMINATION

2

3    EXAMINATION                                    PAGE

4    BY MR. NISENBAUM                                 6

5
                       --o0o--
6

7    Appearance Page                                  3

8    Exhibit Page                                     4

9    Location                                         5

10   Deponent's Signature                           100

11   Reporter's Certificate                         101

12   Disposition                                    102

13   Witness Letter                                 103

14   Deponent's Changes/Corrections                 104

15   Attorney's Notes                               105

16

17                     --o0o--

18

19

20

21

22

23

24

25

                                                     2

DEPOSITION OF OFFICER DANIEL HOPWOOD

```
 1              A P P E A R A N C E S

 2

 3    For Plaintiffs:
          BURRIS, NISENBAUM, CURRY & LACY, LLP
 4        BY: BEN NISENBAUM, ATTORNEY AT LAW
          Airport Corporate Center
 5        7677 Oakport Street, Suite 1120
          Oakland, California 94621
 6        510.839.5200
          ben.nisenbaum@johnburrislaw.com
 7

 8    For Defendants:

 9        McNAMARA, DODGE, SLATTERY, BORGES & AMBACHER, LLP
          BY: NOAH G. BLECHMAN, ATTORNEY AT LAW
10        3480 Buskirk Avenue, Suite 250
          Pleasant Hill, California 94523
11        (925) 939-5330
          noah.blechman@mcnamaralaw.com
12

13        Also present:

14            Maria Quinto-Collins
              Robert Collins
15            Isabella Collins

16

17                      --o0o--

18

19

20

21

22

23

24

25
                                                        3
```

DEPOSITION OF OFFICER DANIEL HOPWOOD

```
1                        INDEX TO EXHIBITS

2                         DANIEL HOPWOOD

3

4    NUMBER        DESCRIPTION                          PAGE

5      1           Audio file titled 12-23-2020-2300m_    52
                   With enhanced audio (1).mp4
6

7                         --o0o--

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                                          4
```

**DEPOSITION OF OFFICER DANIEL HOPWOOD**

```
1    BY MR. NISENBAUM:
2         Q      Okay.
3                What type of medical aid do you give them?
4         A      Unconscious, CPR.
5         Q      Okay.
6                Well, that's if the heart has stopped beating;
7    right?
8         A      Correct.
9         Q      Okay.
10               If they're -- if they go unconscious and their
11   heart's still beating --
12        A      Check for a pulse, clear the airway, check for
13   shock, try to wake them up.
14        Q      Okay.
15               And do you want to get them in a position of
16   recovery?
17        A      Yes.
18        Q      Okay.
19               And the position of recovery is on your side?
20        A      It can be, yes.
21        Q      Okay.
22               Well, what else can it be?
23        A      I guess it is on your side.
24        Q      Okay.  All right.
25        A      The one we're trained is on your side with the
```

<div align="right">23</div>

DEPOSITION OF OFFICER DANIEL HOPWOOD

```
 1   leg up.
 2        Q     Right.
 3              And the reason -- there are a lot of reasons
 4   for that.  But one of them is that it gives you a clear
 5   airway, and if the person throws up or vomits, then it
 6   will come out, and it will be less -- there will be less
 7   aspiration into the lungs; correct?
 8        A     Correct.
 9        Q     Okay.
10              And you're supposed to monitor people that
11   you're restraining; correct?
12        A     That's correct.
13        Q     And how are you supposed to do that?  What are
14   you supposed to do to monitor them?
15              MR. BLECHMAN:  Incomplete hypothetical as
16   phrased.
17              Go ahead.
18              THE WITNESS:  There's a couple of ways to do
19   it.  Visually, breathing, up and down of the chest.
20   Verbally.  The subject's movements.  That's pretty much
21   all I can think of right now.
22   BY MR. NISENBAUM:
23        Q     Okay.
24              You say "visually," if the subject's
25   breathing?
```

24

DEPOSITION OF OFFICER DANIEL HOPWOOD

```
 1      A    Yes.
 2      Q    Okay.
 3           So you wouldn't go in without considering
 4  those factors; correct?
 5      A    Correct.
 6      Q    All right.
 7           Did you respond lights and siren?
 8      A    No, I did not.
 9      Q    Okay.
10           Is there a type of response that you
11  responded?   Code 2?
12      A    Code 2 doesn't really exist for our standards.
13      Q    All right.
14      A    Just get there as fast as you can in the legal
15  limits of the city.
16      Q    All right.
17           So you did that?
18      A    Correct.
19      Q    And you arrived about the same time as
20  Officer Shipilov?
21      A    I did.
22      Q    Okay.
23           I have a question.  I don't know if you know
24  the answer to this.
25           But you've been an Antioch Police officer for
```

29

**DEPOSITION OF OFFICER DANIEL HOPWOOD**

1   got him in a figure four leg lock.

2        Q    Okay.

3             And what was Officer Becerra's position

4   relative to Mr. Quinto?

5        A    So he was at the shoulder.  He was at Quinto's

6   left shoulder, kneeled down.  I'm not 100 percent sure

7   if he had his weight on Mr. Quinto -- Quinto at the

8   time.

9        Q    Okay.

10            You actually saw him on his left-side

11  shoulder, correct, with his -- what you thought was his

12  knee on his left-side shoulder; correct?

13            MR. BLECHMAN:  Vague and ambiguous.  May

14  misstate prior statements or testimony.

15            But you can respond.

16            THE WITNESS:  That is what I said in my first

17  interview.  But thinking back now, I can't 100 percent

18  be certain.

19  BY MR. NISENBAUM:

20       Q    Well, your first interview, the events were

21  fresh in your mind; right?

22       A    I believe so, yes.

23       Q    Okay.

24            I'm going to play that.  And this is --

25            MR. NISENBAUM:  And I may want you to

                                                          32

DEPOSITION OF OFFICER DANIEL HOPWOOD

1    transcribe it.  Let me just take a look.

2              This is 9:59 to 10:29.  I'll start it at 9:57

3    because that's where my cursor goes.

4              (Media played.)

5              "A  -- lying face down on the ground

6              handcuffed and had his feet in a figure

7              four leg lock by another officer.

8              "Q  Do you recall who that was?

9              "A  Yes.  Officer Perkinson was on the

10             feet of the figure four leg lock.  And

11             then Officer Becerra was on the subject's

12             left-side shoulder.

13             "Q  Okay."

14             MR. NISENBAUM:  Pausing that at 10:22.

15   BY MR. NISENBAUM:

16       Q    You said, "Officer Becerra was on the

17   subject's left-side shoulder"; correct?

18       A    I did in that interview, yes.

19       Q    Okay.

20             And that's what you recall; correct?

21             MR. BLECHMAN:  Vague and ambiguous as to

22   "that."

23   BY MR. NISENBAUM:

24       Q    You recall -- you recall seeing

25   Officer Becerra with a knee -- one knee on the ground

33

**DEPOSITION OF OFFICER DANIEL HOPWOOD**

1   and one knee on Mr. Quinto's left-side shoulder;

2   correct?

3          MR. BLECHMAN:  May misstate the witness's

4   prior statement.

5          You can respond.

6          THE WITNESS:  Like I told you at the beginning

7   of this interview, I'm not 100 percent sure.  But he was

8   at that shoulder.  And the way they were positioning, I

9   thought he was -- had his knee on him.

10  BY MR. NISENBAUM:

11     Q    Okay.

12     A    Okay.

13     Q    Okay.

14          To be clear, you believed at that time that

15  Officer -- that Officer Becerra's -- was that his left

16  knee was on Mr. Quinto's left shoulder?

17     A    I can't recall.

18     Q    Okay.

19          But one knee -- you thought one knee was on

20  the ground and one knee was on Mr. Quinto's left

21  shoulder; correct?

22          MR. BLECHMAN:  May misstate the witness's

23  testimony.  Asked and answered.

24          But go ahead.

25          THE WITNESS:  Like I said before at the

34

DEPOSITION OF OFFICER DANIEL HOPWOOD

```
1      Q    Okay.
2           He was in a position where -- he was in a
3  position to be having his weight on him; correct?
4           MR. BLECHMAN:  Vague and ambiguous as to "his
5  weight."
6           But you can respond.
7           THE WITNESS:   True.
8  BY MR. NISENBAUM:
9      Q    Well, I'm talking about Officer Becerra's
10  weight.
11     A    True.
12          MR. BLECHMAN:  That's my objection.  Yeah.
13  BY MR. NISENBAUM:
14     Q    Okay.
15          And, of course, you didn't have a device to
16  measure how much pressure was being applied, if any;
17  correct?
18     A    That is correct.
19     Q    But it looked to you at the time there was
20  physical contact between the knee -- the left knee and
21  Mr. Quinto's left shoulder; correct?
22     A    From my perspective, yes.
23     Q    Okay.
24          And how long did you observe that Officer
25  Becerra was in that position?
```

37

DEPOSITION OF OFFICER DANIEL HOPWOOD

1     A     Roughly 30 seconds.

2     Q     Okay.

3           And you weren't timing it; right?

4     A     I was not timing it.

5     Q     And what happened -- what happened next?

6     A     I moved some boxes from the hallway.

7  Officer Perkinson asked if someone could switch out with

8  him so he could do the 5150 evaluation form.  I answered

9  up and said I'll switch out with him.

10    Q     Okay.

11          Now, switching out with Officer Perkinson

12 would mean at that time that Perkinson was at the legs;

13 correct?

14    A     Correct.

15    Q     So if you switched out directly with

16 Perkinson, you would have gone to the legs; correct?

17    A     Correct.

18    Q     Okay.

19          But that's not what happened?

20    A     Correct.

21    Q     So explain what happened and why.

22    A     Okay.  So the room is kind of confined; so

23 Perkinson decides to switch with Officer Becerra cause

24 it's easier.  So they do that as I take over a position

25 on Quinto's left shoulder.

                                                    38

**DEPOSITION OF OFFICER DANIEL HOPWOOD**

1     Q     Okay.

2           And you did have your knee on Mr. Quinto's

3  left shoulder; correct?

4     A     I did.

5     Q     And that was on the back of his left shoulder

6  on the shoulder blade; correct?

7     A     Correct.

8     Q     And which knee did you have on him?

9     A     It was my left.

10    Q     Okay.

11          And you held that position there for

12 approximately 20 to 30 seconds by pure estimation;

13 correct?

14    A     Correct.

15    Q     Okay.

16          Now, it's true that the last time that you saw

17 Mr. Quinto's chest rise and fall as if he were breathing

18 was about two minutes before Mr. Quinto was rolled over;

19 correct?

20    A     I believe so, yes.

21    Q     Okay.

22          Were you keeping an eye on him?

23    A     Me and Becerra were.

24    Q     Okay.

25          So two minutes seems like a long time, right,

                                                          39

**DEPOSITION OF OFFICER DANIEL HOPWOOD**

1      A    All right.  So when I first took the position

2  on his left shoulder blade, I stayed there approximately

3  20 to 30 seconds cause I didn't really know the scope of

4  the situation, if he was actually fighting or not.

5  Obviously he's a guy having a mental crisis.  We've

6  already got an ambulance on the way.

7           So I realize he's not pushing up.  He's still

8  screaming, not squirming too much.  So I go into a

9  catcher stance, which is my left -- both of my feet are

10  pinned on the ground, and my knees are up.  My left knee

11  is over his shoulder blade, not putting any pressure on

12  it.  I probably hold that for 30 seconds because that

13  gets tiring real quick.  And then I go to two knees on

14  the ground.

15      Q    Okay.

16           And how long -- what period of time was that,

17  though, is my question.  Before you stood up, I want the

18  scope of time, including the time that your knee was on

19  him, where you were next to him at his shoulder before

20  you stood up and no longer had a view of him?

21           MR. BLECHMAN:  So just so it's clear, at the

22  point in time where he first makes physical contact to

23  the time when he stands up?  Is that how you want to do

24  it?

25  ///

                                                              42

**DEPOSITION OF OFFICER DANIEL HOPWOOD**

1   BY MR. NISENBAUM:

2        Q    Well, the point in time when you first made

3   physical contact with Mr. Quinto was when your knee

4   began to be on the back of his left shoulder; correct?

5        A    Correct.

6        Q    Okay.

7             So from that point in time to when you stood

8   up.

9        A    After reviewing the videos, I've learned that

10  it's longer than my estimated three minutes.  So

11  anywhere from approximately four to five minutes.

12            MR. BLECHMAN:  So from the time you first put

13  your knee on him to the time you stood up is four to

14  five minutes?  Is that what you're saying?

15            MR. NISENBAUM:  That is what he's saying.

16            MR. BLECHMAN:  I want to make sure you

17  understood his question.

18            MR. NISENBAUM:  Well, now that sounds like

19  coaching.

20  BY MR. NISENBAUM:

21        Q    Do you understand?

22        A    30 minutes to -- sorry.  Not 30 minutes.  20

23  to 30 seconds on the shoulder.  And then I was in the

24  catcher position for approximately another 30 seconds.

25  Then I told him, "I'm going to just put my knees down."

43

**DEPOSITION OF OFFICER DANIEL HOPWOOD**

1   I put my knees down.  And I probably stayed there for

2   another minute or two.  And we were talking to Mom.  And

3   then I stood up.

4        Q    Okay.

5             So -- and that's how you get the four to

6   five minutes; correct?

7        A    Sorry.  Was I saying minutes?

8        Q    Four to five.

9        A    Oh, minutes.  Correct.

10       Q    Between four to five minutes, to be clear.

11       A    Correct.

12       Q    Okay.  All right.

13            And when you first contacted Mr. Quinto,

14   was -- were his shoulders moving?  What was he doing?

15       A    I believe he was squirming a little bit to the

16   left and right.

17       Q    Okay.

18            And he was still yelling; is that right?

19       A    That is correct.

20       Q    Okay.

21            And he began calming down at some point;

22   correct?

23       A    That's correct.

24       Q    And quieting down; correct?

25       A    I was telling him, "Calm down.  It's going to

44

**DEPOSITION OF OFFICER DANIEL HOPWOOD**

1      A     That's correct.

2      Q     And you know that CPR is only given to people

3   who don't have a heartbeat; correct?

4      A     Correct.

5      Q     Okay.

6            So you knew certainly then that his heart had

7   stopped at some point; correct?

8      A     When I rolled him over, that's when I first

9   noticed.

10     Q     Okay.

11           So when you rolled him over, you first noticed

12   that his heart stopped.

13           Are you the voice on there that says, "We

14   gotta get him out of here"?

15     A     Absolutely.

16     Q     That's you?

17     A     That's me.

18     Q     Okay.

19           And that was -- why did you say that?

20     A     Cause AMR was already coming down the hallway.

21   And so I'm preparing to roll him over.  And I see the

22   blood immediately.  I tell Becerra, "We gotta get him

23   out of here." He does the sternum rub.  AMR's already

24   at the threshold of the door.  And they start getting a

25   bag out.

49

**DEPOSITION OF OFFICER DANIEL HOPWOOD**

1    A    It wasn't obvious until I rolled him over.

2  Sorry.

3    Q    Okay.

4         Was she closer to Angelo or were you when you

5  rolled Angelo over?

6         MR. BLECHMAN:  Vague and ambiguous.

7         But go ahead.

8         THE WITNESS:  She was at the end of the bed

9  kind of like parallel with me.

10  BY MR. NISENBAUM:

11    Q    All right.

12         And you say that you said, "We gotta get him

13  out of here" because you had rolled him over and seen

14  blood; correct?

15    A    Correct.

16    Q    Okay.

17         How many times did you roll him over?

18    A    Initially rolled him over and was shocked.  I

19  said, "We gotta get him out of here."  He's still

20  handcuffed.  And then I think Becerra comes over and

21  sternum rubs him.

22    Q    Okay.

23         So you saw the sternum rub; correct?

24    A    Yes.

25    Q    Okay.  All right.

53

DEPOSITION OF OFFICER DANIEL HOPWOOD

1           And that's something else that wasn't

2   testified to at the inquest or your initial interview

3   either; correct?

4        A    That is correct.

5        Q    Okay.

6             MR. BLECHMAN:  Hold on.

7             Belated objection.  Argumentative.  And vague

8   and ambiguous as to "that."

9   BY MR. NISENBAUM:

10       Q    The fact that it was Becerra who did the

11  sternum rub on Angelo before the paramedics even came in

12  the room.

13            Correct?

14            MR. BLECHMAN:  Calls for speculation as to

15  where the paramedics were when the sternum rub occurs.

16            But you can respond.

17            THE WITNESS:  I mean, the paramedics were

18  3 feet, 2 feet away from us when he does the sternum

19  rub.

20  BY MR. NISENBAUM:

21       Q    My question, though, was:  Were they in the

22  room?

23       A    They were not in the room because there wasn't

24  enough room in the room.

25       Q    Okay.

54

**DEPOSITION OF OFFICER DANIEL HOPWOOD**

```
1              Go ahead.
2              THE WITNESS:  I would say possibly, yes.
3    BY MR. NISENBAUM:
4         Q    Okay.
5              You understand my question?  I'm talking about
6    the time frame from when you -- well, strike that.
7              After Mr. Quinto calmed down, you believe that
8    his heart was still beating; correct?
9         A    Correct.
10        Q    Okay.
11             After Mr. Quinto calmed down, that's when you
12   stood up; correct?
13        A    I believe I stood up closer to when
14   Officer Shipilov came on the radio and said AMR was
15   arriving on scene.
16        Q    Okay.
17             How long was it between when Mr. Quinto calmed
18   down to when that communication was made?
19        A    I thought we kind of got into this already.
20        Q    Yeah.
21             MR. BLECHMAN:  Can you restate the question?
22   Sorry.
23             (The record was read.)
24             MR. NISENBAUM:  That's okay.
25   ///
```

96

BY MR. NISENBAUM:

Q That's that four- to five-minute window we talked about?

A I believe so.

Q Got it. All right.

So you stood up -- so just cause it's late in the day and I don't have the transcript in front of me, you stood up after the communication was made that AMR had arrived by Shipilov; right?

A I believe so, yes.

Q Okay.

And it was a four- to five-minute window to when paramedics actually came in? Or was it the other way? It was when you -- when he calmed down to when Shipilov made that communication?

A I believe it was the other way.

Q Okay.

So four- to five-minute window from when Shipilov made that communication -- I'm sorry -- to when he calmed down to when Shipilov made the communication.

You were standing up when he made the communication or no?

MR. BLECHMAN: Misstates the witness's testimony.

MR. NISENBAUM: I'm sorry.

**DEPOSITION OF OFFICER DANIEL HOPWOOD**

1        CERTIFICATE OF STENOGRAPHIC REPORTER

2            I certify that the witness in the foregoing

3    deposition, DANIEL HOPWOOD, was by me duly sworn

4    in to testify in the within-entitled cause;

5    that said deposition was taken at the time

6    therein named; that the testimony of said witness was

7    stenographically reported by me, a duly Certified

8    Shorthand Reporter of the State of California authorized

9    to administer oaths and affirmations, and said testimony

10   was thereafter transcribed into typewriting to the best

11   of my ability via remote teleconferencing.

12            I further certify that I am not of counsel or

13   attorney for either or any of the parties to said

14   deposition, nor in any way interested in the outcome of

15   the cause named in said deposition.

16            The dismantling, unsealing, or unbinding of

17   the original transcript will render the Reporter's

18   Certificate null and void.

19            IN WITNESS WHEREOF, I have hereunto set my

20   hand this 1st day of May, 2023.

21

22

23   _____/s/Kyle Ridenour_____
     KYLE RIDENOUR, RPR
24   Certified Shorthand Reporter
     Certification No. 14473
25

                                                        101