# EXHIBIT M

DEPOSITION OF IKECHI OGAN, M.D. - VIDEOCONFERENCE

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

--o0o--

MARIA QUINTO-COLLINS,           )
individually and as             )
co-successor-in-interest;       )
ANDREI CARLOS QUINTO,           )
individually and as             )
co-successor-in-interest;       )
and ISABELLA COLLINS,           )
individually and as             )
co-successor-in-interest,       )
                                )
          Plaintiffs,           )
                                )
     vs.                        ) CASE NO.: 4:21-cv-06094-VC
                                )
CITY OF ANTIOCH, a              )
municipal corporation,          )
et al; and DOES 1-50,           )
inclusive, individually,        )
jointly and severally,          )
                                )
          Defendants.           )
_____) CERTIFIED COPY


VIDEOCONFERENCE

DEPOSITION OF IKECHI OGAN, M.D.

WEDNESDAY, JULY 27, 2022

4:11 p.m. - 7:08 p.m.



REPORTED BY:  LILIANA RODRIGUEZ, CSR No. 13783

1

```
 1                  INDEX OF EXAMINATION

 2

 3   EXAMINATION                                    PAGE

 4   By Mr. Nisenbaum                          7, 118

 5   By Mr. Blechman                              115

 6
                         --o0o--
 7

 8   Appearance Page                                 3

 9   Exhibit Page                                  4-5

10   Location                                        6

11   Declaration Under Penalty of Perjury          119

12   Reporter's Certificate                        120

13   Disposition                                   121

14   Witness Letter                                122

15   Deposition Errata Sheet                       123

16   Attorney's Notes                              124

17

18                         --o0o--

19

20

21

22

23

24

25
                                                    2
```

```
 1   REMOTE APPEARANCES:

 2

 3   For Plaintiffs:

 4        LAW OFFICES OF JOHN L. BURRIS
          BENJAMIN NISENBAUM, ATTORNEY AT LAW
 5        JAMES COOK, ATTORNEY AT LAW
          7677 Oakport Street, Suite 1120
 6        Oakland, California 94621
          510.839.5200
 7        Ben.Nisenbaum@johnburrislaw.com

 8

 9   For Defendants:

          McNAMARA, AMBACHER, WHEELER,
10        HIRSIG & GRAY, LLP
          NOAH G. BLECHMAN, ATTORNEY AT LAW
11        3480 Buskirk Avenue, Suite 250
          Pleasant Hill, California 94523
12        925.939.5330
          noah.blechman@mcnamaralaw.com
13

14   Also Present:

15        Ruby Yearling, Law Offices of John L. Burris
          Kirthi Basu, Law Offices of John L. Burris
16        Cindy Cox, Law Offices of John L. Burris

17

18                        --o0o--

19

20

21

22

23

24

25
```

3

DEPOSITION OF IKECHI OGAN, M.D. - VIDEOCONFERENCE

```
1                    INDEX TO EXHIBITS
2                    IKECHI OGAN, M.D.
3       MARIA QUINTO-COLLINS vs. CITY OF ANTIOCH, et al.
4                  WEDNESDAY, JULY 27, 2022
5
        MARKED              DESCRIPTION              PAGE
6
7    Exhibit 1      Color copy of photograph          74
                    BOP20-026 A(50).JPG
8
     Exhibit 2      Coroner's Report, 17 pages         76
9
     Exhibit 3      Color copy of photograph          82
10                  BOP20-026 A(52).JPG
11   Exhibit 4      Color copy of photograph          82
                    BOP20-026 A(53).JPG
12
     Exhibit 5      Color copy of photograph          83
13                  BOP20-026 A(54).JPG
14   Exhibit 6      Color copy of photograph          83
                    BOP20-026 A(55).JPG
15
     Exhibit 7      Color copy of photograph          84
16                  BOP20-026 A(56).JPG
17   Exhibit 8      Color copy of photograph          85
                    BOP20-026 A(57).JPG
18
     Exhibit 9      Color copy of photograph          86
19                  BOP20-026 A(59).JPG
20   Exhibit 10     Color copy of photograph          87
                    BOP20-026 A(60).JPG
21
     Exhibit 11     Color copy of photograph          88
22                  BOP20-026 A(61).JPG
23   Exhibit 12     Color copy of photograph          88
                    BOP20-026 A(62).JPG
24
     Exhibit 13     Color copy of photograph          89
25                  BOP20-026 A(63).JPG
                                                        4
```

1  INDEX TO EXHIBITS (continued)

2

MARKED               DESCRIPTION                    PAGE

3

4  Exhibit 14   Color copy of photograph            89
               BOP20-026 A(64).JPG

5

   Exhibit 15   Color copy of photograph            90
6               BOP20-026 A(65).JPG

7  Exhibit 16   Color copy of photograph            90
               BOP20-026 A(66).JPG

8

   Exhibit 17   Color copy of photograph            91
9               BOP20-026 A(69).JPG

10  Exhibit 18   Color copy of photograph           92
                BOP20-026 A(71).JPG

11

   Exhibit 19   Color copy of photograph            93
12              BOP20-026 A(72).JPG

13  Exhibit 20   Color copy of photograph           94
                BOP20-026 A(74).JPG

14

   Exhibit 21   Color copy of photograph            95
15              BOP20-026 A(77).JPG

16  Exhibit 22   Color copy of photograph           95
                BOP20-026 A(80).JPG

17

18                   --o0o--

19

20

21

22

23

24

25

5

1        Zoom videoconference deposition taken pursuant to

2   Deposition Notice and on WEDNESDAY, JULY 27, 2022,

3   commencing at the hour of 4:11 p.m., thereof, before

4   me, LILIANA RODRIGUEZ, CSR No. 13783, a Certified

5   Shorthand Reporter and Deposition Officer of the State

6   of California, there personally appeared:

7                        IKECHI OGAN, M.D.,

8   called as a witness by the Plaintiff, who having been

9   duly sworn by me, to tell the truth, the whole truth and

10  nothing but the truth, testified as hereinafter set

11  forth:

12

13                        --o0o--

14

15

16

17

18

19

20

21

22

23

24

25

                                                        6

1    the pictures.  But let me just go through them real

2    quick.  All right.  I'm going to stop with the pictures.

3         So, Doctor, is it fair to say that the presence

4    of petechial hemorrhages makes it more likely that the

5    comment that you have in your coroner's report, "A prone

6    position with weight on the back may have played an

7    additional role in Mr. Quinto's death," is even more

8    likely?

9         MR. BLECHMAN:  Calls for speculation.  Lacks

10   foundation.  Calls for expert testimony.

11        You can respond.

12        THE WITNESS:  What I would say is that it is

13   probably a good idea in cases like this where prone

14   positions are a possible factor that the autopsy be

15   delayed for a day or two.  Because I think if I had what

16   I'm seeing now in the eyes, I might have made more

17   forceful statements than I made.  I don't withdraw

18   anything I said.  I am comfortable with my conclusions.

19   I know that I looked for what I could find.  But

20   obviously the fact that the petechiae had not developed

21   on the day I did the autopsy was a significant factor.

22   And if I had seen these -- and there's no way I could

23   have missed these -- I may have written my conclusions

24   in a different manner.  That's what I'm comfortable

25   saying.

96

1    Q.  Are you saying -- what do you mean by a different

2    manner?  Are you saying that asphyxiation during

3    restraint would have been a more likely scenario than as

4    you understood it at the time you prepared your autopsy

5    report?

6    A.  No.  What I'm saying is that I made it a point of

7    duty to mention the possibilities, and they included the

8    excited delirium, the prone position restraint.  Because

9    I was trying to convey the complexity and the

10   completeness of the diagnosis.  I tried to not -- if I

11   had had the petechiae, which I've just seen now, which I

12   know I did not see on that day, which teaches me that

13   maybe it's a good idea to wait a day or two or maybe

14   even more before a case like that is done.  I might have

15   emphasized some parts of the report different.  But I'm

16   comfortable with what I wrote.

17   Q.  What would you have emphasized differently?

18        MR. BLECHMAN:  Calls for speculation.

19        But go ahead.

20        THE WITNESS:  I have to think about it more

21   completely.  I can't just give you something off the

22   cuff.

23   BY MR. NISENBAUM:

24   Q.  I'm not asking for anything off the cuff, but it

25   strikes me that what you're referring to is the

                                                            97

1    there was some particular shortcoming of mine because I

2    didn't say that.  If I had been asked I would have

3    answered it.  I put it in my report on the first page,

4    first line of my comment.

5        Q.  All right.  I was heartened to see it.

6            So, again, given the presence of now of what you

7    see as petechial hemorrhages, the prone position with

8    weight on the back playing an additional role becomes

9    more prominent, correct?

10           MR. BLECHMAN:  Argumentative as phrased.  Lacks

11   foundation.

12           You can respond.

13           THE WITNESS:  That has already been stated.

14   BY MR. NISENBAUM:

15       Q.  Yes or no?

16       A.  I've already said that.  I've already put that in

17   the report.

18       Q.  Are you saying yes?

19       A.  I think it's an important piece of information,

20   and I handled it as such.  I put it in the report.

21       Q.  Listen to my question closely.  This is -- I'm

22   trying to make this my last question.  The presence of

23   petechial hemorrhages in Mr. Quinto's eyes is important

24   information in connection with the prone position with

25   weight on the back that may have played an additional

113

DEPOSITION OF IKECHI OGAN, M.D. - VIDEOCONFERENCE

1  role, correct, they go together?

2      A.  Let me put it this way:  If I did have the

3  petechiae in the eyes it would have had a significance

4  to the prone position and possible weight on the body

5  during restraint.  And I would possibly have stressed

6  that a little bit more than I did.  That's the best

7  answer I can give you.

8      Q.  Thank you.

9          MR. NISENBAUM:  All right.  I don't have any

10 other questions pending review of the coroner's

11 photographs.  And like I said, if I do see petechiae in

12 there, then I will bring you back.  Thank you.

13         MR. BLECHMAN:  So, Dr. Ogan, I do have questions.

14 I think my estimate is probably two hours worth of

15 questions approximately.  There is some exhibits to show

16 you.  It's 7:00 p.m.  I understand you want to get

17 through this, but do you want me to go forward with two

18 hours of questioning at this point, or do you want to

19 try to reschedule this for another time to complete

20 this?  What is your preference?

21         THE WITNESS:  And after you're done he will have

22 some more questions?

23         MR. NISENBAUM:  It's possible.

24         MR. BLECHMAN:  It's possible.  And I'd say it's

25 very likely.

                                                    114

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

--o0o--

| | |
|---|---|
| MARIA QUINTO-COLLINS, individually and as co-successor-in-interest; ANDREI CARLOS QUINTO, individually and as co-successor-in-interest; and ISABELLA COLLINS, individually and as co-successor-in-interest, | ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CASE NO.: 4:21-cv-06094-VC ) |
| CITY OF ANTIOCH, a municipal corporation, et al; and DOES 1-50, inclusive, individually, jointly and severally, | ) ) ) ) ) |
| Defendants. | ) ) |
| _____ | ) CERTIFIED COPY |

VIDEOCONFERENCE DEPOSITION OF

IKECHI OGAN, M.D. - VOLUME II

WEDNESDAY, AUGUST 10, 2022

1:00 p.m. - 4:30 p.m.

REPORTED BY:  LILIANA RODRIGUEZ, CSR No. 13783

125

1
                INDEX OF EXAMINATION

2

3   EXAMINATION                                  PAGE

4   By Mr. Blechman                       130

5   By Mr. Nisenbaum                   209

6

7                        --o0o--

8

   Appearance Page                    127
9
   Exhibit Page                       128
10
   Location                            129
11
   Declaration Under Penalty of Perjury    256
12
   Reporter's Certificate             257
13
   Disposition                      258
14
   Witness Letter                     259
15
   Deposition Errata Sheet           260
16
   Attorney's Notes                 261
17

18                      --o0o--

19

20

21

22

23

24

25

                                        126

DEPOSITION OF IKECHI OGAN, M.D.- VOLUME II - VIDEOCONFERENCE

```
1    REMOTE APPEARANCES:

2

3    For Plaintiffs:

4         LAW OFFICES OF JOHN L. BURRIS
          BENJAMIN NISENBAUM, ATTORNEY AT LAW
5         JAMES COOK, ATTORNEY AT LAW
          7677 Oakport Street, Suite 1120
6         Oakland, California 94621
          510.839.5200
7         Ben.Nisenbaum@johnburrislaw.com

8

9    For Defendants:

10        McNAMARA, AMBACHER, WHEELER,
          HIRSIG & GRAY, LLP
          NOAH G. BLECHMAN, ATTORNEY AT LAW
11        3480 Buskirk Avenue, Suite 250
          Pleasant Hill, California 94523
12        925.939.5330
          noah.blechman@mcnamaralaw.com

13

14   Also Present:

15        Ruby Yearling, Law Offices of John L. Burris

16

17                       --o0o--

18

19

20

21

22

23

24

25
                                                      127
```

DEPOSITION OF IKECHI OGAN, M.D.- VOLUME II - VIDEOCONFERENCE

INDEX TO EXHIBITS

IKECHI OGAN, M.D., VOLUME II

MARIA QUINTO-COLLINS vs. CITY OF ANTIOCH, et al.

WEDNESDAY, AUGUST 10, 2022

| MARKED | DESCRIPTION | PAGE |
|--------|-------------|------|
| Exhibit 23 | Color copies of autopsy photos, 88 photos | 168 |
| Exhibit 24 | Color copies of autopsy photos, 116 photos | 176 |
| Exhibit 25 | Video reenactment | 193 |
| Exhibit 26 | Color copy of photograph, BOP20-026(A)49.JPG | 218 |
| Exhibit 27 | Autopsy photo 9233 | 221 |
| Exhibit 28 | "Eyelid Petechiae and Conjunctival Hemorrhage After Cardiopulmonary Resuscitation," 1999 | 231 |
| Exhibit 29 | "Resuscitation and Conjunctival Petechial Hemorrhages," 2010 | 231 |

--o0o--

128

DEPOSITION OF IKECHI OGAN, M.D.- VOLUME II - VIDEOCONFERENCE

1
2          Zoom videoconference deposition taken pursuant to

3     Deposition Notice and on WEDNESDAY, AUGUST 10, 2022,

4     commencing at the hour of 1:00 p.m., thereof, before

5     me, LILIANA RODRIGUEZ, CSR No. 13783, a Certified

6     Shorthand Reporter and Deposition Officer of the State

7     of California, there personally appeared:

8                    IKECHI OGAN, M.D.,

9     called as a witness by the Plaintiff, who having been

10    duly sworn by me, to tell the truth, the whole truth and

11    nothing but the truth, testified as hereinafter set

12    forth:

13
                         --o0o--
14

15

16

17

18

19

20

21

22

23

24

25

                                                      129

1    A.   Many times rib are broken, but it's -- yes.   But

2  it tends to happen more common in the older people who

3  bones are already brittle.   For a young man who was in

4  his -- was 30 years old, this is his peak of

5  physicality.   I'm not surprised his bones did not break.

6    Q.   Now, I want to make certain that we have the

7  sequence of events correct.   There is some, I think,

8  claim by the defendants that maybe Mr. Quinto suffered

9  compression-type injuries by being restrained -- while

10  being restrained by his mother and his sister.

11       Was it your understanding that Mr. Quinto died

12  while being restrained by his mother or his sister?

13    A.   No.

14    Q.   No.

15       Isn't it true that he died while being restrained

16  by the defendants in this case?

17       MR. BLECHMAN:   Misstates -- argumentative and

18  misstates the records.

19       You can respond.

20       THE WITNESS:   I understand he became unresponsive

21  during the struggle with law enforcement, not with his

22  family members.

23  BY MR. NISENBAUM:

24    Q.   And, in fact, didn't law enforcement officers at

25  the scene say that he became combative so that -- so

236

1   they had to restrain him?

2       A.   That is what they said, yes.

3       Q.   Okay.   That's what they told the paramedics,

4   right?

5           MR. BLECHMAN:   Hold on.   Lacks foundation.   Calls

6   for speculation.   Hearsay.

7           You can respond.

8           THE WITNESS:   I wasn't there, but the

9   investigation brought back by the deputy sheriffs

10  indicate that he became unresponsive during restraint by

11  law enforcement.   What was the question?   I'm sorry.

12  BY MR. NISENBAUM:

13      Q.   It happened -- when you say "unresponsive," what

14  you're referring to, he lost vital signs of life, right?

15      A.   Yes.   He became unconscious, yes.

16      Q.   Not just unconscious, no pulse, no breathing

17  either, correct?   That happened in the course of the

18  restraint by the police is your understanding, correct?

19          MR. BLECHMAN:   Calls for speculation.   Lacks

20  foundation.

21          You can respond.

22          THE WITNESS:   I understand he became

23  unresponsive, and therefore they began -- they initiated

24  CPR trying to resuscitate him.

25  ///

237

1    BY MR. NISENBAUM:

2      Q.   And isn't it true that when the paramedics

3    arrived, at least according to their records, Mr. Quinto

4    was already unresponsive?

5      A.   Like I said, he was unresponsive at some point,

6    leading to them trying to get him -- the EMS people

7    trying to work on him.  I don't know exactly what the

8    time -- who did what when.  I wasn't there.  But I

9    understand that during the restraint by police, he

10   became unresponsive, and so they activated the EMS

11   system.

12     Q.   Okay.  And isn't it -- well, did you have an --

13   did you have -- I don't know what you mean "activated

14   the EMS system."  What do you mean by that?

15     A.   Emergency medical system.

16     Q.   What is -- when you say activate the EMS system,

17   what do you mean?

18     A.   Well, the police began doing CPR, and then they

19   called fire, rescue, or whoever it was.  I don't know.

20   I'm just trying to say they -- and then when those

21   people came, he was then -- they tried to resuscitate

22   him and took him to the hospital.

23     Q.   Is it true that compression of the carotid artery

24   can block the flow of blood to the brain?

25     A.   Yes.

238

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

--o0o--

| | |
|---|---|
| MARIA QUINTO-COLLINS, )<br>individually and as )<br>co-successor-in-interest; )<br>ANDREI CARLOS QUINTO, )<br>individually and as )<br>co-successor-in-interest; )<br>and ISABELLA COLLINS, )<br>individually and as )<br>co-successor-in-interest, )<br>)<br>          Plaintiffs, )<br>)<br>     vs.          ) CASE NO.: 4:21-cv-06094-VC<br>)<br>CITY OF ANTIOCH, a )<br>municipal corporation, )<br>et al.; and DOES 1-50, )<br>inclusive, individually, )<br>jointly and severally, )<br>)<br>          Defendants. )<br>_____)     CERTIFIED COPY | |

VIDEOCONFERENCE DEPOSITION OF

IKECHI OGAN, M.D. - VOLUME III

WEDNESDAY, FEBRUARY 1, 2023

2:00 p.m. - 4:12 p.m.

REPORTED BY:  KYLE RIDENOUR, RPR, CSR No. 14473

262

```
 1                   INDEX OF EXAMINATION

 2

 3   EXAMINATION                                 PAGE

 4   By Mr. Nisenbaum                       267, 335

 5   By Mr. Blechman                             319

 6

 7                      --o0o--

 8

     Appearance Page                             264
 9
     Exhibit Page                                265
10
     Location                                    266
11
     Deponent's Signature                        339
12
     Reporter's Certificate                      340
13
     Disposition                                 341
14
     Witness Letter                              342
15
     Deponent's Changes/Corrections              343
16
     Attorney's Notes                            344
17

18                      --o0o--

19

20

21

22

23

24

25
                                                 263
```

```
 1              A P P E A R A N C E S

 2

     For Plaintiffs:
 3
          LAW OFFICES OF JOHN L. BURRIS
 4        BENJAMIN NISENBAUM, ATTORNEY AT LAW
          JAMES COOK, ATTORNEY AT LAW
 5        Airport Corporate Center
          7677 Oakport Street, Suite 1120
 6        Oakland, California 94621
          510.839.5200
 7        Ben.Nisenbaum@johnburrislaw.com

 8

     For Defendants:
 9
          McNAMARA, AMBACHER, WHEELER,
10        HIRSIG & GRAY, LLP
          NOAH G. BLECHMAN, ATTORNEY AT LAW
11        3480 Buskirk Avenue, Suite 250
          Pleasant Hill, California 94523
12        925.939.5330
          noah.blechman@mcnamaralaw.com
13

14   Also Present:

15        Ruby Yearling, Law Offices of John L. Burris
          Crystal Mackey, Law Offices of John L. Burris
16

17                      --o0o--

18

19

20

21

22

23

24

25
                                                        264
```

**DEPOSITION OF IKECHI OGAN, M.D. - VOLUME III - VIDEOCONFERENCE**

INDEX TO EXHIBITS

IKECHI OGAN, M.D., VOLUME III

MARIA QUINTO-COLLINS vs. CITY OF ANTIOCH, et al.

WEDNESDAY, FEBRUARY 1, 2023

| NUMBER | DESCRIPTION | PAGE |
|--------|-------------|------|
| 30 | Color copy of photograph IMG_0112.jpg | 289 |
| 31 | Color copy of photograph IMG_0100.jpg | 327 |
| 32 | Color copy of photograph IMG_0101.jpg | 327 |
| 33 | Color copy of photograph IMG_0106.jpg | 327 |
| 34 | Color copy of photograph IMG_0107.jpg | 327 |
| 35 | Color copy of photograph IMG_0108.jpg | 327 |
| 36 | Color copy of photograph IMG_0109.jpg | 327 |

--o0o--

265

1

2

3

4

5

6

7                              ***

8

9          Videoconference deposition of IKECHI

10    OGAN, M.D., Volume III, taken on behalf of

11    PLAINTIFFS, all parties appearing from remote

12    locations, commencing at 2:02 PM, WEDNESDAY,

13    FEBRUARY 1, 2023, before KYLE RIDENOUR, Registered

14    Professional Reporter, California Certified

15    Shorthand Reporter No. 14473, pursuant to notice.

16

17                              ***

18

19

20

21

22

23

24

25

                                                    266

**DEPOSITION OF IKECHI OGAN, M.D.- VOLUME II - VIDEOCONFERENCE**

1    STATE OF CALIFORNIA )
                         )
2    COUNTY OF FRESNO    )

3

4         I, LILIANA RODRIGUEZ, Certified Shorthand Reporter,

5    in and for the State of California, do hereby certify:

6         That the foregoing proceedings were taken before me

7    remotely at the time and place herein set forth; that

8    any witnesses in the foregoing proceedings, prior to

9    testifying, were duly sworn; that a record of the

10   proceedings was made by me using machine shorthand which

11   was thereafter transcribed under my direction; that the

12   foregoing is a true record of the testimony given.

13        Pursuant to Federal Rule 30(e), transcript review

14   was requested.

15        I further certify that I am neither financially

16   interested in the action, nor a relative or employee of

17   any attorney or party to this action.

18        IN WITNESS WHEREOF, I have this date subscribed my

19   name.

20

21   DATED:  8/24/22

22   Fresno, California

23

24        _/s/Liliana Rodriguez_____
          LILIANA RODRIGUEZ, CSR No. 13783
25

                                                      257

 1    deposition.  And I believe this is actually

 2    screen-shared.

 3            Do you see it?  Do you see your autopsy

 4    findings?

 5        A    Yes, I do.

 6        Q    Okay.

 7            And -- you know, and I know we covered this

 8    already.  But on the third page of Exhibit 2 which is at

 9    the top, it says "Cause of death."  You wrote, "Excited

10    delirium syndrome."  You have a comment.  "Prone

11    position with weight on the back may have played an

12    additional role.  Case reviewed with A. Josselson and

13    M. Super, M.D.s."

14            So the comment regarding prone position with

15    weight on the back having played an additional role was

16    a reference to a compression of the rib cage causing

17    asphyxiation of Mr. Quinto; correct?

18        A    That's correct.

19            MR. BLECHMAN:  Hold on.

20            Belated objection.  Calls for speculation.

21    Lacks foundation to this witness.  Assumes facts not in

22    evidence.

23            But go ahead.

24    BY MR. NISENBAUM:

25        Q    And when you had the evidence of petechial

                                                        302

1   hemorrhages, that is also evidence of -- of a pressure

2   on a person's back when in a prone position; correct?

3       A   If I had had the petechial hemorrhages in the

4   eyes under my autopsy, it would have made me to consider

5   more favorably, yes, the positional asphyxiation, yes.

6       Q   Okay.

7       And so now that you do have that information,

8   now that you've been presented with it, what is your

9   final conclusion as to Mr. Quinto's cause of death?

10       MR. BLECHMAN:  Overbroad and vague and

11   ambiguous and assumes facts not in evidence.

12       Go ahead.

13       Also may call for expert testimony.

14       THE WITNESS:  I still think fundamentally that

15   my diagnosis is sound.  But I might have worded the --

16   the diagnosis maybe slightly different, maybe be a

17   little bit more descriptive.  I tried to do that by

18   adding the comments and then writing in comprehensive

19   notes, including quoting several publications to explain

20   my line of thought.

21       But I do agree with you that if I had had

22   those petechiae which Dr. Omalu had, it would have been

23   a significant piece of information for me to consider.

24   BY MR. NISENBAUM:

25       Q   Tell me how.  How would it be -- you said your

303

1    diagnosis, you would have worded it differently.  Tell

2    me how you would have -- how you would word it.

3        A     I may have added the words "positional

4    asphyxiation" somewhere in the diagnosis.

5        Q     Okay.

6              And was that how you -- with the evidence that

7    you now have, is that how you see the case, that it was

8    a combination of excited delirium syndrome with

9    positional asphyxiation?

10             MR. BLECHMAN:  Calls for speculation.  Lacks

11   foundation.  Calls for expert testimony.  Assumes facts

12   not in evidence.  Vague and ambiguous.

13             You can answer.

14             THE WITNESS:  If I had the petechiae that

15   Dr. Omalu had a couple of days later -- oh, can I ask

16   you, Mr. Nisenbaum, how long after my autopsy did Omalu

17   do his?

18   BY MR. NISENBAUM:

19       Q     I don't recall.  I know it was relatively

20   quickly.  But it wasn't hours.  I know that.  So it was

21   probably a couple days.  But I don't have any personal

22   recollection.

23       A     Well, I am a frontline forensic pathologist

24   who is practicing.  There are people who are doing

25   research.  There is a heavy debate right now about the

                                                    304

1    pros and cons about these diagnoses, which I am reading

2    and I am following.

3         If I had had the petechiae, I might have added

4    the positional asphyxiation, those words, you know, into

5    my diagnosis somewhere.  Because clearly with the broad

6    petechiae that he had in his eyes, there was some sort

7    of obstruction of respiration.

8         Q    Okay.

9         And that is your opinion now with seeing the

10   materials with those --

11        A    Yes, that is my opinion now.

12        Q    Your opinion is that there was some disruption

13   of his respiration; correct?

14        A    That is my opinion now.  I would have written

15   the diagnosis in a different manner to reflect that

16   information.

17        Q    Okay.

18        And you believe that that obstruction was a

19   factor in his death?  You're not saying it was the only

20   factor, but it was a factor in his death, the disruption

21   of his respiration, Mr. Quinto's; correct?

22             MR. BLECHMAN:  Vague and ambiguous as to

23   "disruption of respiration."  Lacks foundation to this

24   witness.

25             But go ahead.

305

1           THE WITNESS:  I think that would be a fair

2    conclusion.

3    BY MR. NISENBAUM:

4        Q    Thank you.

5             Okay.  I'm basically done.

6             Have you followed this in the news at all?

7        A    No.  I try not to read the news.  It gives me

8    high blood pressure.

9        Q    Okay.  I hear you.

10            Did you read about how somehow fentanyl -- how

11   the DA decided that fentanyl played a role in

12   Mr. Quinto's death?

13            MR. BLECHMAN:  Lacks foundation.

14            Go ahead.

15            THE WITNESS:  The DA in this county?

16   BY MR. NISENBAUM:

17       Q    Yeah.  The DA in this county decided that

18   somehow fentanyl played a role in Mr. Quinto's death.

19       A    Well, I am not aware of that.  I have not

20   followed the news.  But I can assure you that based on

21   our expanded toxicology, there was no fentanyl detected.

22       Q    Okay.

23            What you do know is that -- let me ask you

24   this:  You are aware that he was -- that there was a

25   toxicology screen of Mr. Quinto when he went into the

                                                        306

1    days later after the event pressure is already released?

2         A    The --

3              MR. NISENBAUM:  Calls for speculation.  Beyond

4    the scope of his expertise.

5    BY MR. BLECHMAN:

6         Q    You can respond.

7         A    I've done no independent testifying or studies

8    in a controlled environment.  But I know that the

9    petechiae happen when the small blood vessels burst,

10   which would be when the pressure is most.

11             However, the bleeding might not occur right

12   away because it might be -- because of it being in the

13   capillaries, it's actually not under great pressure.

14   It's an oozing bleeding, not a pumping bleeding.  And

15   that's why I think it evolves slowly over time, it

16   becomes more florid, more visible over time.

17        Q    Okay.

18             Now, let me represent to you that the rest

19   of -- well, strike that.

20             Let me ask you this question:  When you say in

21   your autopsy report and you discussed a little bit today

22   that prone position with weight on the back may have

23   played an additional role, real briefly, what is that --

24   what is that opinion based upon in terms of what

25   factors?

                                                      316

1        A       It was based on the fact that some of the

2    reports I read from the law enforcement did admit to

3    either one or two people being on his back or shoulder

4    when he was on the ground.   And I was thinking that

5    taking just an average weight of a policeman of, let's

6    say, 150 or 175 pounds, that could significantly affect

7    the ability to breathe and expand -- expand one's chest,

8    especially if their hands are handcuffed behind them and

9    they are prone on the ground.

10       Q     Okay.

11             And so that was my -- okay.

12             So based on the reports that some officers

13   talked about having some pressure to his upper body,

14   that was one of the factors for that part of the

15   opinion?

16       A     Yes.   That was one of the factors.

17       Q     Is another factor now the fact that you

18   believe there has been signs of petechiae in

19   Mr. Quinto's eyes?   Is that another factor?

20       A     That is another factor.

21             And then a third factor would be the bruising

22   he had on his back and his shoulder, which are

23   indicative of some pressure being applied in those

24   areas.

25       Q     Okay.

                                                        317

**DEPOSITION OF IKECHI OGAN, M.D. - VOLUME III - VIDEOCONFERENCE**

1          CERTIFICATE OF STENOGRAPHIC REPORTER

2               I certify that the witness in the foregoing

3     remote deposition, IKECHI OGAN, M.D., was by me duly

4     sworn in remotely to testify in the within-entitled

5     cause; that said deposition was taken remotely at the

6     time therein named; that the testimony of said witness

7     was stenographically reported by me, a duly Certified

8     Shorthand Reporter of the State of California authorized

9     to administer oaths and affirmations, and said testimony

10    was thereafter transcribed into typewriting to the best

11    of my ability via remote teleconferencing.

12               I further certify that I am not of counsel or

13    attorney for either or any of the parties to said

14    deposition, nor in any way interested in the outcome of

15    the cause named in said deposition.

16               The dismantling, unsealing, or unbinding of

17    the original transcript will render the Reporter's

18    Certificate null and void.

19               IN WITNESS WHEREOF, I have hereunto set my

20    hand this 13th day of February, 2023.

21

22

23        /S/Kyle Ridenour
          KYLE RIDENOUR, RPR
24        Certified Shorthand Reporter
          Certification No. 14473
25

340