**JOHN L. BURRIS, ESQ., SBN 69888**
**BEN NISENBAUM, ESQ., SBN 222173**
**JAMES COOK, ESQ., SBN 300212**
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Center
7677 Oakport Street, Suite 1120 Oakland, CA 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
Email: John.Burris@johnburrislaw.com
Email: Ben.Nisenbaum@johnburrislaw.com
Email: James.Cook@johnburrislaw.com

Attorneys for Plaintiffs
MARIA QUINTO-COLLINS, ANDREI CARLOS QUINTO, and ISABELLA COLLINS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA QUINTO-COLLINS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ANTIOCH, et al.,<br><br>Defendants. | CASE NO.: CASE NO.: 3:21-cv-06094-VC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>**Time: 2:00 p.m.**<br>**Date: December 14, 2023**<br>**Dept.: Ctrm 10, 19th Floor**<br><br>**Honorable Judge Araceli Martinez-Olguin** |

## TABLE OF CONTENTS

INTRODUCTION ........ 1
ARGUMENT ........ 2
A. The Officers did not have Probable Cause to Arrest Angelo ........ 2
B. The Facts Defendants Rely on in Asserting that the Officers Used "Limited" Force are All Disputed ........ 4
1. Questions Remain Regarding How Much Pressure and Where Pressure was Applied to Angelo's Back ........ 4
2. Questions Remain Regarding Whether Angelo was Screaming, Kicking or Breathing ........ 5
C. The Officers Violated Angelo's Clearly Established Constitutional Rights ........ 6
D. The Officers' Failure to Place Angelo in Recovery Position was Per Se Unreasonable ........ 7
E. Officer Shipilov is an Integral Participant in the Force Used ........ 8
F. Defendants Concede that the Defendant Officers' Actions Proximately Caused Angelo's Death ........ 8
G. The Officers' Conduct Shocks the Conscience in Violation of the Fourteenth Amendment ........ 9
H. Questions of Fact Preclude Summary Judgment on Plaintiffs' State Law Claims ........ 9
CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ......................................................................... 4

*Austen v. County of Los Angeles*, No. CV1507372, 2016 WL 471216 (C.D. Cal. 2016) .................... 3

*Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) ............................................................ 8

*Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014) ..................................................................... 4

*Drewry v. County of Riverside*, 2023 WL 2627740, No. EDCV 20-2554 JGB (C.D. Cal. Jan. 23, 2023) ................................................................................................................................................. 8

*Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003) .......................................................... 6

*Fish v. Regents of Univ. of Cal.*, 246 Cal.App.2d 327 (1996) ............................................................. 3

*Foster v. City of Indio*, 908 F.3d at 1204 (9th Cir. 2018) .................................................................... 9

*Garlick v. County of Kern*, 167 F.Supp.3d 1117 (2016) .................................................................. 6, 9

*Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014) ............................................................... 4

*Jackson v. Fed. Express*, 766 F.3d 189 (2d Cir. 2014) ....................................................................... 2

*Jenkins v. Cty. of Riverside*, 398 F.3d 1093 (9th Cir. 2005) ............................................................... 2

*Kroeger v. Vertex Aerospace LLC*, 2020 WL 3546086 (C.D. Cal. June 30, 2020) ............................. 9

*Lopez v. City of L.A.*, 196 Cal.App.4th 675 (2011) ....................................................................... 1, 10

*Mehta v. City of Upland*, 748 Fed.Appx. 739 (9th Cir. 2018) ............................................................ 6

*Perez v. City of Fresno*, 591 F.Supp.3d 725 (2022) ............................................................................ 7

*Sahadi v. Liberty Mut. Ins.*, 2019 WL 4417675 (N.D. Cal. Sept. 16, 2019) ........................................ 9

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) ........................................................................ 8

*Snapkeys, Ltd. v. Google LLC*, 539 F.Supp.3d 1040 (2021) ............................................................ 2, 9

**California Statutes**

Welf. & Inst. Code, § 5150 ........................................................................................................ 2, 3, 5, 7

Welfare and Institutions Code section 5278 ......................................................................................... 3

Plaintiffs' Reply in Support of Plaintiffs' Cross Motion for Summary Judgment
*Maria Quinto-Collins, et al. v. City of Antioch, et al.*, 3:21-cv-06094-VC
iii

**INTRODUCTION**

Defendants' Reply and Opposition to Plaintiffs' Cross Motion for Summary Judgment reveal some misunderstandings about Plaintiffs' Motion for Cross Summary Judgment that Plaintiffs' clarify herein. First, Defendants' wrongly circumscribe Plaintiffs' brief as a partial motion for summary judgment. Determining that the Defendant Officers acted unreasonably is dispositive of all of Plaintiffs' claims, including their state law claims for negligence. *Lopez v. City of L.A.*, 196 Cal.App.4th 675, 685 (2011).

Secondly, Defendants urge that Plaintiffs cannot *both* argue that material fact questions preclude Defendants' motion for summary judgment *and* claim that Plaintiffs are entitled to summary judgment. This argument is both dizzying and wrong. Defendants argue they are entitled to summary judgment because the Officers used lawful limited force on Angelo Quinto, as the Officers testified that they only placed pressure on his shoulder and never pressed their body weight down on him. Plaintiffs maintain that the testimonial evidence of percipient witnesses and the physical evidence directly refute the Officers' self-serving testimony in this regard. That is, whether the Officers used a limited amount of force is a question of fact. Defendants also argue that it is undisputed that Angelo died suddenly; however, the testimony and video evidence indicates that Angelo slowly expired during the prone restraint and that he was likely dead for several minutes before the Officers physically checked on him.

By contrast, Plaintiffs argue that they are entitled to summary judgment because the undisputable evidence of Maria's cell phone video shows that the prolonged duration (nearly five minutes) of the prone restraint and the Officers' failure to place Angelo in a recovery position for all of this time is, itself, a clearly established use of unreasonable force. At all times during Maria's cell phone video, it is clear that Angelo is non-responsive and not moving, and the Officers continued to hold him down ignoring his medical distress, even as Maria is alerting the Officers to her observations that something was wrong with Angelo.

Importantly, Defendants fail to oppose Plaintiffs' causation of death argument and Plaintiffs' request that this Court find that Angelo died by asphyxiation, as conceded to by both parties' medical

experts—and not excited delirium brought on by Modafinil use. This Court properly views Defendants' silence as a concession or waiver. *Snapkeys, Ltd. v. Google LLC*, 539 F.Supp.3d 1040, 1050 (2021) (finding that a plaintiff waived argument by failing to address the defendant's contention in a motion for summary judgment that the plaintiff had not created a genuine issue of material fact); *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (upholding finding that the plaintiff "abandoned her other two claims by not raising them in opposition to the County's motion for summary judgment"); *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) ("Generally...a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others.").

Here, Plaintiffs reply only to Defendants' most salient arguments raised in their Opposition and Reply, and do not abandon or intend any waiver of arguments made in their Cross Motion for Summary Judgment but are not restated herein.

## ARGUMENT

**A. The Officers did not have Probable Cause to Arrest Angelo**

Defendants argue that the Officers initially detained Angelo to investigate alleged crimes towards his family, and that this detention turned into a 5150 hold. Plaintiffs maintain that the Officers did not have probable cause to place Angelo on a 5150 hold.

"When determining if probable cause exists to take a person into custody…, pursuant to Section 5150…, [the authorized person] shall consider available relevant information about the historical course of the person's mental disorder if the[y] determine[] that the information has a reasonable bearing on the determination as to whether the person is a danger to others, or to himself or herself, or is gravely disabled as a result of the mental disorder." Welf. & Inst. Code, § 5150.05, subd. (a). As such, Perkinson was required to consider Maria's statements about Angelo's mental health and relevant conduct. Maria testified (and can be heard on the cell phone video telling the Officers) that Angelo was confused and that he did not hurt her or Isabella. Indeed, Maria expressly denies and protests Hopwood's suggestion that Angelo "is a danger to others."

Defendants' assertion of statutory immunity, pursuant to Welfare and Institutions Code

§ 5278, is misplaced. "[A]lthough the decision [whether to detain someone under a 5150 involuntary hold] itself is discretionary, it [is] required to be made under the provisions of…the Welfare and Institutions Code." *Fish v. Regents of Univ. of Cal.*, 246 Cal.App.2d 327, 332 (1996). Probable cause supporting a decision to place someone on an involuntary 5150 hold must be based on the officers' personal observations. *Fish*, 246 Cal.App.2d at 332 ("the application shall state that the officer believes, *as a result of his personal observation*, that the person is mentally ill and because of his illness is likely to injure himself or others if not immediately hospitalized.") (emphasis added). Defendants overstate the importance of the 911 call, and they attempt to rely on the substance of the 911 call (as the basis for the 5150 hold) to the exclusion of what they observed with their own eyes and learned from other sources once they were on the scene. *See e.g., Austen v. County of Los Angeles*, No. CV1507372, 2016 WL 471216, at *6 (C.D. Cal. 2016) (holding that Plaintiff sufficiently had plead violation of 5150 because the proper 5150 procedures were not followed and there was no probable cause to place him under involuntary hold merely based off of a report by a suicide hotline worker). Maria informed the Officers that Angelo did not harm the family and that he likely had an undiagnosed mental illness The Officers observed Maria and Angelo in a bear hug chest-to-chest and leaning on a TV stand. Angelo was not in control of his mother and the Officers quipped at how strong Maria was and how she appeared to be in control of him. That is, the scene that the Officers observed with their own eyes was not consistent with their representation of the substance of the 911 call. The Officers' personal observations did not warrant an involuntary hold.

Defendants also speciously argue that Perkinson recognized Angelo from a prior call for service where methamphetamine may have been involved. Perkinson did not realize that he might have been in the same location as a prior call for service until the situation had calmed down, that is, after he made the decision to place Angelo on a 5150 hold. (Document 66-6 at p. 8.) This recollection did not factor into Perkinson's decision to place a hold on Angelo and is misleadingly mentioned by Defendants. Moreover, that Angelo may have smoked meth before has no bearing on what he was going through during the subject incident—particularly since the toxicology reveals that he did not

have any drugs on board—so in addition to being deeply prejudicial, Perkinson's testimony on this point is decidedly irrelevant.

**B. The Facts Defendants Rely on in Asserting that the Officers Used "Limited" Force are All Disputed**

Defendants argue that the "officers used limited force to calm down Quinto as they awaited the ambulance, [and] Quinto was still alive, breathing, and moving during this time." By so arguing, Defendants misrepresent the record. Defendants also urge that "Plaintiffs [*sic*] arguments do not present a genuine factual dispute…." Not so. Plaintiffs' disputes are based on evidence—not merely argument.

In deciding a summary judgment motion, this Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge…ruling on a motion for summary judgment...." *Anderson*, 477 U.S. at 255. "[I]n the deadly force context, [this Court] cannot simply accept what may be a self-serving account by the police officer." See *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014). This Court must carefully examine "all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence…, to determine whether the officer's story is internally consistent and consistent with other known facts." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014). This Court must also examine "circumstantial evidence that, if believed, would tend to discredit the police officer's story." *Id*.

***1. Questions Remain Regarding How Much Pressure and Where Pressure was Applied to Angelo's Back***

In arguing that the Officers used "limited" force on Angelo, Defendants ignore the fact that Maria, Isabella and Shipilov are percipient witnesses whose testimony contradicts that of the other Defendant Officers, and that the Officers' self-serving testimony is not consistent with the physical evidence. Becerra testified that he only ever applied his knee to Angelo's shoulder. This testimony is

directly refuted by Shipilov's testimony that Becerra had his hands on Angelo's back for several minutes. Defendants argue that Shipilov's testimony "does not prove any excessive and/or unreasonable force by Becerra." This argument rather misses the point. Shipilov's testimony creates a question of fact as to whether Becerra put pressure on Angelo's back—which Becerra denies doing. And this testimony calls Becerra's credibility into question—that is, a jury can determine that if Becerra is not being truthful about where he applied pressure to Angelo, then he is also not telling the truth about how much pressure he placed on Angelo's back. These two questions, alone, defeat Defendants' motion for summary judgment. Defendants appear to concede that Becerra applied pressure to Angelo's back by claiming that "[i]ts logical…that Becerra would be in some limited contact with the upper body of Quinto…," however, this is not what Becerra testified to. In fact, Becerra emphatically denies pressing down on Angelo's back.

In addition, Defendants' argument that there was no significant pressure on Angelo's back for any significant period of time is contradicted by the physical evidence. Dr. Omalu's autopsy photos reveal numerous petechial hemorrhages (among other physical manifestations) indicating that the Officers significantly compressed and asphyxiated Angelo to death.

### 2. Questions Remain Regarding Whether Angelo was Screaming, Kicking or Breathing

Defendants wrongly claim that it is undisputed that Angelo was screaming. Maria expressly testified that Angelo was not screaming and that he made disgruntled noises once he was handcuffed. And Isabella testified that Angelo made sounds of distress before he went completely silent. To the extent that Angelo made any disgruntled and distressed noises, he did so during the first few moments of the detention. A reasonable jury can determine that, by the time Shipilov and Perkinson left the Quinto home to fill out the 5150 application and wait for the ambulance, Angelo was silent and totally under control, otherwise these Officers would not have left the scene.

Defendants misrepresent the record in claiming Angelo was kicking his legs. Hopwood testified that Angelo did not kick or squirm within seconds of the Officers making physical contact with him. (Document 66-8 at p. 15.) By the time Becerra transitioned to Angelo's lower body, he only felt tension in Angelo's legs. (Document 66-5 at pp. 18-19.) And, per Maria's cell phone video,

it is undisputed that Angelo did not kick, move, or make a sound for the duration of the prolonged portion of the restraint—which lasted for nearly five minutes. Moreover, courts have determined that whether a suspect was bucking for air because he could not breathe or kicking at officers in resistance is a question of fact. *See e.g. Garlick v. County of Kern*, 167 F.Supp.3d 1117, 1156-1157 (2016).

Defendants claim that it is undisputed that Angelo was breathing; therefore, he was alive. Not so. Whether Angelo was appreciably breathing is a contested issue. The Officers testified that they were trained to avoid placing body weight on a detainee's back as that would affect their rib cage and interfere with their ability to breathe. (Document 66-7 at pp. 6, 8-10.) Thus, Becerra placing pressure on Angelo's back would necessarily impede Angelo's ability to breathe. Dr. Omalu explains the mechanism of breathing, the visible physical effects that inadequate oxygen had on Angelo's brain, and how long it took the lack of oxygen to lead to his death. (Document 66-12 at p. 23-34.) And sadly, Maria points out to the Officers when Angelo last moved, presumably when he took his last breath, which was several minutes before the Officers turned Angelo over and actually responded to his medical distress.

The evidence suggests that Angelo was not screaming, kicking or breathing for a long time— indeed, long enough for a reasonable officer to recognize that Angelo was in medical distress, particularly because Maria stood nearby asking the Officers to check Angelo's well-being. Contrary to Defendants' contention that Angelo died suddenly, this evidence suggests that Angelo died slowly during the course of the restraint.

**C. The Officers Violated Angelo's Clearly Established Constitutional Rights**

Plaintiffs maintain that the Officers' use of force on Angelo was neither "limited" nor lawful.

Again, compression asphyxia is a severe and substantial use of force and occurs when "prone and handcuffed individuals in an agitated state…suffocate[] under the weight of restraining officers." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003). Defendants' citation to *Mehta v. City of Upland*, 748 Fed.Appx. 739 (9th Cir. 2018) is misplaced. Mehta had a car accident with a carjacking suspect and an officer accidently broke Mehta's thumb in his attempt to pull him out of his wrecked vehicle and away from the scene of the standoff between the trapped carjacking suspect and

the armed police that surrounded both wrecked vehicles. *Mehta*, 748 Fed.Appx at 741-742. The governmental interest in the use of force in *Mehta* bears no resemblance to the veritable lack of governmental interest at issue here, where the Defendant Officers had determined to get mental health services for Angelo who they determined had not harmed any of his family members. Defendants' other attempts to distinguish case law authorities where courts, including the Ninth Circuit, have determined that the Defendant Officers' restraint of Angelo, as described by Maria and Shipilov—prone, handcuffed, knee across his back, hands pressed down on his back and his feet pushed towards his buttocks such that his knees/legs were lifted off the floor—was a deadly use of force for which they are not entitled to qualified immunity are equally unavailing.

**D. The Officers' Failure to Place Angelo in Recovery Position was Per Se Unreasonable**

Again, it is undisputed that the Officers never placed Angelo on his side in recovery position. Defendants baldly assert that "failing to position someone cannot be said to be any unreasonable force as the contention is that someone was not touched and moved in a certain way." (Document 69 at p. 10.) This argument strains credulity. First, the Defendant Officers were actively touching Angelo by pushing on his back when he was prone and bending his legs back and pushing them toward his buttocks in an aggressive figure-four lock. Secondly, courts have expressly found, under circumstances similar to these, that officers' failure to place a handcuffed prone suspect in a recovery position to be a constitutional violation. *Perez v. City of Fresno*, 591 F.Supp.3d 725, 756-758 (2022) (relying on *Drummond* and finding "viewing the evidence in the light most favorable to Plaintiffs, there were no serious crimes involved and Perez was being taken into custody under § 5150 for his own safety. Perez was resisting for most of the encounter, which means that some amount of force was necessary to successfully detain and transport Perez for medical aide. However, the various degrees of pressure…and the amount of time that law enforcement had struggled with Perez in a prone position, constitutes severe force. *Instead of keeping Perez prone, it appears that law enforcement personnel could have rolled Perez on his side*…. Therefore, the evidence is sufficient for a jury to conclude that the City Officers and County Deputies used excessive force against Perez in violation of the Fourth Amendment.") (emphasis added).

Finally, Plaintiffs submit that the converse of Defendants' snide and insensitive remark about people who are asleep are still breathing more aptly describes the subject incident, i.e., people who appear to be asleep may also be unconscious and in need of medical intervention.[1]

**E. Officer Shipilov is an Integral Participant in the Force Used**

Plaintiffs maintain that Officer Shipilov was an integral participant in the violations because he observed the unconstitutional restraint of Angelo, which he knew full well could result in Angleo's death, and he failed to intervene. Compare, *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 n.12 (9th Cir. 2007) (concluding that an officer who arrived after the use of excessive force did not participate in the unlawful conduct). Defendants suggest that Shipilov had to watch Angelo expire before he would have any liability. This is nonsensical. Shipilov observed conduct that created a substantial risk of death or serious bodily injury when this amount of force was not warranted. *Smith v. City of Hemet*, 394 F.3d 689, 705 (9th Cir. 2005).

**F. Defendants Concede that the Defendant Officers' Actions Proximately Caused Angelo's Death**

Plaintiffs moved for this Court to find, as a matter of fact, that the Officers' actions (i.e., applying weight to his back while he laid prone and handcuffed) proximately caused Angelo's death, as both parties' medical expert agree that the police Officers' conduct was a substantial factor in Angelo's death. Defendants are completely silent on this point. (See Document 69 generally.) This Court should find this fact conclusively in Plaintiffs' favor.

When a non-moving party opposing summary judgment fails to address an argument raised by the moving party, courts typically treat the non-moving party's silence as a concession on the issue or a waiver of their argument. See e.g., *Drewry v. County of Riverside*, 2023 WL 2627740, No. EDCV 20-2554 JGB (SHKx), at *6 (C.D. Cal. Jan. 23, 2023) (holding that a plaintiff concedes an argument by failing to address it in their opposition to a motion for summary judgment); see *Kroeger v. Vertex*

---

[1] Defendants curiously implicate Defendant City of Antioch's liability in this matter, by making a party admission that the City's policy is to only place unconscious suspects in recovery position. If this is true, then the City's policy is the moving force behind Plaintiffs' injuries. This Court has bifurcated Plaintiffs' *Monell* causes of action. As such, Plaintiffs will argue the ramifications of Defendants' admission of the City's liability at a later time.

*Aerospace LLC*, 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020) (holding that plaintiff conceded argument by failing to address it in his opposition brief) (collecting cases); *see also Snapkeys, Ltd. v. Google LLC*, 539 F.Supp.3d 1040, 1050 (N.D. Cal. May 17, 2021) (finding that a plaintiff waived their argument by failing to address the defendant's contention in a motion for summary judgment that the plaintiff had not created a genuine issue of material fact); *Sahadi v. Liberty Mut. Ins.*, 2019 WL 4417675, at *9 (N.D. Cal. Sept. 16, 2019) (granting summary judgment to the defendant because the plaintiff "fails to respond to" the defendant's argument and has accordingly "waived any argument" on that point).

This Court should find, as a matter of fact, that the Officers' actions proximately caused Angelo's death.

**G. The Officers' Conduct Shocks the Conscience in Violation of the Fourteenth Amendment**

Defendants oppose Plaintiffs' motion for summary judgment on their Fourteenth Amendment claim, not by addressing the arguments or analyzing the case law authority that Plaintiffs advance in their points and authorities but, by relying on phantom concessions made in the Complaint. Plaintiffs maintain that it was practical for the Officers to deliberate about the type and degree of force to use in continuing to restrain Angelo once he was face down on the floor, prone and restrained by multiple officers for anywhere from 4 to 10 minutes. *See e.g., Garlick v. County of Kern*, 167 F. Supp. 3d at 1170-71 (finding "once [the decedent] was in handcuffs the circumstances had de-escalated and officers could deliberate whether to continue applying weight to his back.") Even if this Court finds that the "purpose to harm" standard applies, the Ninth Circuit has recognized that a purpose to harm may sometimes be inferred where "an officer uses force against a clearly harmless or subdued suspect." *Foster v. City of Indio*, 908 F.3d at 1204, 1211 (9th Cir. 2018). Here, Angelo was completely subdued and did not appear conscious, and the Officers continued to compress him until he died. A jury may find the Officers exhibited a purpose to harm, as well.

**H. Questions of Fact Preclude Summary Judgment on Plaintiffs' State Law Claims**

Plaintiffs maintain that the same material factual disputes that preclude summary judgment in Defendants' favor on their § 1983 claims, also precludes summary judgment on their state law

claims. And this Court's determination that the Officers' actions were unreasonable for purposes of the Fourth Amendment is dispositive for Plaintiffs' state law causes of action, including the state law claims for negligence, as well. *Lopez v. City of L.A.*, 196 Cal.App.4th 675, 685 (2011).

## CONCLUSION

Given the foregoing, this Court should deny Defendants' Motion for Summary Judgment and grant Plaintiffs' Motion for Summary Judgment.

Dated: September 14, 2023  THE LAW OFFICES OF JOHN L. BURRIS

/s/*Ben Nisenbaum*
Ben Nisenbaum, Esq.
Attorney for Plaintiffs